MENGEL BOX COMPANY *v.* IKE B. STEVENS, Secretary of
. State.

(*Nashville.* December Term, 1918.) ·

1. **CONSTITUTIONAL LAW.** Taxation. Additional privilege tax.
Foreign corporation. Impairing obligation of contract.

Acts 1900, chapter 504, requiring corporations, which had already en-
tered State and paid for privilege of entering, to pay a privilege
tax measured by their capitalization, and to pay difference be-
tweem sum paid on entering State and amount required by stat-
ute, is constitutional. (*Post, pp.* 375-377.)

Acts cited and construed: Acts 1909, ch. 504.

Cases cited and approved: Cheney Bros. v. Massachusetts, 246 U.
S., 147; Kansas City, M. & B. R. Co. v. Stiles, 242 U. S., 111; St.
Louis Southwestern R. Co. v. Arkansas, 235 U. S., 350; Baltic Min.
Co. v. Massachusetts, 231 U. S., 68.

2. **TAXATION.** Foreign corporations. Privilege tax.

Act 1909, chapter 504, requiring foreign corporations to pay a privi-
lege tax measured by their capitalization, applied to corporations
that had already entered the State; the substance of the privi-
lege being doing of business in State. (*Post, p.* 377.)

3. **STATUTES.** Construction. Interpretation by officials.

While an interpretation of a statute long adopted by State officials
will be highly favored by the court, it will not be followed if
palpably wrong. (*Post, pp.* 377, 378.)

Code cited and construed: Sec. 720 .(T.-S.).

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.
—HON. JNO. ALLISON, Chancellor. .

FRANK M. THOMPSON, Attorney-General, for appellant.
RANDOLPH & RANDOLPH, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the complainant to recover
from the secretary of State a balance of a privilege tax
exacted by that official and paid under protest.

The complainant, on September 9, 1899, applied to the
then secretary of State for admission to do business in
Tennessee. The complainant was a corporation, organ-
ized under the laws of New Jersey, with a capital stock
of $1,000,000 on the date mentioned. Permission was
granted to the complainant to enter into this State, and
it complied with all the laws in force with respect to
the admission of foreign corporations, and paid a privi-
lege tax of $100, which was required by the statute at
that time of all foreign corporations. It is a manufac-
turing corporation and has acquired considerable prop-
erty in this State.

By subsequent acts of the legislature, the privilege
tax on foreign corporations was changed from a flat
rate of $100, and the privilege was graduated according
to the captilization of such corporations. The complain-
ant has increased its capital stock several times, and by
the last amendment to its charter was capitalized at
$6,000,000.

Each time the complainant has increased its capital
stock, it has properly filed copy of its amended charter
with the secretary of State and has paid an additional
amount on account of its privilege tax by reason of such
increase of its capital. The complainant and the several
secretaries of State have, in every instance, agreed on

the additional sum that was to be paid, except on the occasion of the last amendment.

By chapter 504 of the Acts of 1909, the legislature, pursuing its later policy of assessment, enacted that the coming into this State of any foreign corporation for the purpose of doing business was declared to be a privilege, and that such foreign corporation should pay a tax measured by the amount of its capital stock. Corporations capitalized at $5,000,000 and over were required to pay $1,500.

The complainant and the present secretary of State were not able to agree on the amount of privilege tax for which the former was liable, under the last amendment to its charter increasing its capital stock to $6,000,000, and, as above stated, the complainant paid in the amount claimed by the secretary of State to be due from it, under protest, and has brought this suit for its recovery.

While, in its previous dealings with the secretaries of State, the complainant has recognized its amenability to the State's change of method and rate of such privilege taxation, nevertheless it now presents the whole question of its liability for any privilege tax other than the $100 originally paid by it. It is insisted for the complainant that, having paid the sum of $100 for the privilege of entering into this State to do business, in 1899, which was the full tax then required, it became entitled to do business in Tennessee thereafter, without any further liability on this account. The chancellor took this view of the case, but in so doing we think he was in error.

This contention would be more plausible if the privilege was merely the entry into the State. That, how-

ever, would be an idle and worthless thing. The substance of the privilege is the right of a foreign corporation to do business in Tennessee, in the language of the statute, the coming into the State "for the purpose of doing business here."

By the payment of the sum exacted of it in 1899, the complainant merely obtained license to do business in this State. The State was not cut off from imposing a higher license or from changing its method of privilege or excise taxation. This is what the State has done. In 1899 any foreign corporation could obtain a license to do business in Tennessee upon the payment of $100 and complying with other requirements of the law. In 1909 the State required foreign corporations to pay a privilege tax measured by their captilization. The State was entitled to do this, and for the privilege of doing business in Tennessee, since 1909, a foreign corporation capitalized at $6,000,000 has been required to pay a tax of $1,500.

The secretary of State gave to the complainant credit for all sums paid by it herein, and exacted only the difference between the aggregate paid and $1,500. We think the complainant was clearly liable for this amount.

The supreme court of the United States has considered at length in several recent cases the taxation of foreign corporations by the several States, and we could add nothing to what has been said by that court in its various opinions. The last of these cases is *Cheney Bros.* v. *Massachusetts,* 246 U. S., 147, 38 Sup. Ct., 295, 62 L. Ed., 632.

The opinion of the court therein fully sustains what we have previously said. See, also, *Kansas City, M. & B. R. Co.* v. *Stiles,* 242 U. S., 111, 37 Sup. Ct., 58, 61 L.

Ed., 176; *St. Louis Southwestern R. Co.*, v. *Arkansas,* 235 U. S., 350, 35 Sup. Ct., 99, 59 L. Ed., 265; *Baltic Min. Co.* v. *Massachusetts,* 231 U. S., 68, 34 Sup. Ct., 15, 58 L. Ed., 127.

In reply to complainant's argument that the act of 1909 is prospective and did not relate to corporations that had already entered into the State, we repeat that the substance of the privilege here is the doing of business in the State. A foreign corporation, previously admitted, that continued to do business in the State subsequent to 1909, became liable to the tax prescribed in the Revenue Act of that year, just as a foreign corporation that entered the State after the act was passed. In either case, the exercise of the privilege— the doing of business—was after and under the statute.

As heretofore stated, the complainant has recognized the validity of the graduated privilege tax ever since it was adopted in Tennessee and has paid an additional sum on the occasion of each increase of its capital. Former secretaries of State adopted a construction of our revenue statutes, and a method of computation of the amounts due from complainant upon the various amendments to its charter, which, if now followed, would result in a smaller liability than the sum required of complainant by the present secretary of State, when its capital stock was last increased. It is not necessary to go into these former computations. They were somewhat complicated and certainly erroneous. It is urged that we should give heed to this interpretation of our revenue statutes by the officers charged with their enforcement. The construction of our statutes for which complainant contends had not been followed by the secretaries of State long enough to make a precedent,

and, as we have seen, was disregarded by the present incumbent of that office. Moreover, while an interpretation of such a statute long adopted by such officials would be highly favored by the court, it would not be followed if palpably wrong.

The case before us is just this. By the act of 1909, all foreign corporations with a capital stock of $5,000,000 and over are required to pay $1,500 for the privilege of doing business in Tennessee. This is not an annual tax, nor is the privilege limited to any period of time. It endures until legally revoked. The tax applies to all foreign corporations so capitalized. If such a corporation has only paid a portion of the tax, it must pay the remainder. It can only exercise the privilege after the payment of $1,500.

There is no question of interstate commerce, nor of due process of law, herein that has not been ruled favorably to the contentions of the State by the decisions of the supreme court, hereinbefore cited. Domestic corporations are required to pay an additional tax upon each increase of their capital stock. Thompson's-Shannon's Code, section 720.

Without further elaboration, we reverse the decree of the chancellor, and dismiss this bill, with costs.