SIMS *v.* CARTER, COUNTY COURT CLERK *et al.*

(*Nashville,* December Term, 1937.)

Opinion filed May 27, 1938.

CANALE, GLANKLER, LOCH & LITTLE, of Memphis, for appellant.

F. H. GAILOR, of Memphis, and EDWIN F. HUNT, Assistant Attorney-General, for appellees.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Complainant, R. B. Sims, Jr., conducts a produce business in the City of Memphis, and paid the privilege tax required of "Produce Dealers" by Item 76, article 2, section 1, of the General Revenue Bill of 1937, Pub. Acts 1937, ch. 108, for the period from April 1, 1937, to April 1, 1938. Thereafter, for the same period of time, because he dressed poultry and sold the same at wholesale, the State exacted of him the privilege tax required of "Wholesale Butchers" by Item 16 of the Revenue Bill. Complainant paid the tax demanded, under protest, and sues in this cause to recover the amount so paid.

The cause is before this court on complainant's appeal from the decree of the chancellor sustaining the demurrer to the bill and dismissing the same.

The sole question made in the cause is that the chancellor was in error in holding that complainant was liable for the privilege tax imposed upon "Wholesale Butchers," notwithstanding complainant is a "Produce Dealer" and had paid the privilege tax as such.

Item 76 of the General Revenue Bill, insofar as it is material to this suit, is as follows:

"Produce Dealers

"Produce dealers are defined to include all persons who buy produce, such as vegetables, eggs, poultry and other farm products, for resale or shipment. Such produce dealers shall pay privilege tax as follows:

"In counties of 50,000 inhabitants or over, each per annum $25.00."

Item 16 of the General Revenue Bill is as follows:

"Butchers, etc.

"Butchers, retail and wholesale dealers in fresh meats selling from an office, stall, store, wagon or other vehicle at wholesale or retail shall pay the following tax:

"Retail

"In cities of 20,000 inhabitants or over, each per annum $15.00 . . .

"But this shall not apply to farmers butchering and selling their own meat of their own raising from wagons or vehicles, nor to abattoir associations whose members are butchers and retailers of fresh meat paying this tax.

"Wholesale

"Each person engaged in the business of wholesale dealer in fresh meats or poultry, other than retail butchers as above provided:

"In counties of 50,000 inhabitants or over, each per annum $200.00 . . .

"Packing houses shall pay the tax above levied upon wholesale dealers."

It is averred in the bill that the commodities dealt in by complainant as a produce dealer consisted of eggs and poultry; that for the year 1937 in dollar value the handling of eggs constituted approximately 78 per cent of his business and the handling of poultry 22 per cent of his business; that for many years it has been and now is customary for produce dealers to buy and sell both live and dressed poultry, but owing to sanitary requirements promulgated by the city of Memphis, many purchasers of poultry find it inexpedient to dress poultry, and for that reason produce dealers find it increasingly

necessary to slaughter and dress poultry for sale to them, whereas in former years a greater part of their business consisted in the sale of live poultry; that the handling of poultry by complainant is an integral part of the business of a produce dealer; that it is a long-established and well-known fact that the handling of poultry is an incident to the conduct of the business of produce dealers; that by a long-settled administrative practice on the part of officials charged by law with the duty of assessing and collecting privilege taxes in the State of Tennessee, the business of produce dealers has been recognized to be a single business, and the handling of poultry as an integral part thereof, and it was not until about the month of January, 1938, that said officials ever claimed that produce dealers were subject to the privilege tax of $200 provided for in Item 16 of the Revenue Bill, although a similar privilege tax had been regularly enacted by the Legislature for a great many years.

It appears from the bill that complainant slaughtered poultry and sold it to retail stores and to restaurants, hotels, and such like, during the tax period above mentioned.

Article 1, section 1, subsections (m) and (n), contains the following provisions:

"(m) Any person doing an act herein declared to be a privilege shall be deemed to be doing business within the meaning of this Act. . . .

"(n) Each person engaged in a single business, which business might fall under two or more items of Section 1 of this bill, shall pay the highest tax imposed by such items, but only one tax. This provision shall not be construed to permit any person to exercise two or more taxable privileges by the payment of only one tax."

Item 76 defines produce dealers as "persons who buy produce, such as vegetables, eggs, poultry and other farm products, for resale or shipment." As contended by counsel for the State, a person who buys produce for resale or shipment is entirely different from a person who buys poultry for the purpose of slaughtering and dressing it thereafter for sale to retailers.

We see no conflict between Items 76 and 16, with respect to slaughtered poultry. The privilege under Item 76, a produce dealer, embraces the buying and selling of live poultry; but if the poultry be slaughtered after purchase by the produce dealer, and he sells it at wholesale, then he becomes, under Item 16, a "person engaged in the business of wholesale dealer in fresh meats or poultry," and is classified as a wholesale butcher. Complainant was doing an act, in the slaughtering and wholesaling of poultry, which, under subsection (m) of section 1, article 1, of the Revenue Bill, must be deemed to be doing business as a wholesale butcher.

██ Complainant contends that long-continued administrative construction of a statute is entitled to great weight. This principle applies only where the statute is ambiguous. *National Life & Accident Ins. Co.* v. *Dempster,* 168 Tenn., 446, 460, 79 S. W. (2d), 564; *Price-Bass Co.* v. *McCabe,* 161 Tenn., 67, 29 S. W. (2d), 249; *Mengel Box Co.* v. *Stevens,* 141 Tenn., 373, 210 S. W., 635. Furthermore, from the allegations of the bill, it appears that complainant has not carried on his business, with respect to poultry, in the same manner in which during former years he and other produce dealers in Memphis have operated. It is averred in the bill that complainant and others find it increasingly necessary "to slaughter and dress poultry for sale to them, whereas in former

years a greater part of their business consisted in the sale of live poultry."

It is further contended by complainant that where the single or entire business of "Produce Dealers" is expressly taxed, and the language which defines the privilege and imposes the tax expressly includes a particular phase thereof, the Legislature, in the absence of express language, cannot be assumed to have intended an additional and separate privilege tax on the same phase, under a separate item entitled "Butchers." This contention overlooks the provision of subsection (m) which provision is that "Any person doing an act herein declared to be a privilege shall be deemed to be doing business within the meaning of this Act." The complainant is doing the act defined to be a privilege under Item 16. He is slaughtering and dressing poultry and selling it to retailers. The cases of *Allison & Co.* v. *Killough,* 156 Tenn., 294, 300 S. W., 5; and *Frank* v. *Lindsey,* 156 Tenn., 456, 2 S. W. (2d), 412, relied on by complainant, were decided under the Revenue Act of 1925, Pub. Acts 1925, ch. 134, and the Revenue Act of 1927, Pub. Acts 1927, ch. 89, respectively, which acts contained no provision such as subsection (m).

Upon a consideration of the question presented for determination, we are constrained to affirm the decree of the chancellor. Complainant will pay the costs of this court.