## WESTERN LOAN & BUILDING CO. v. FRANKS, State Treasurer, et al.

### No. 199.

District Court, D. Nevada.

June 24, 1938.

Leroy F. Pike, of Reno, Nev., and H. L. Mulliner, of Salt Lake City, Utah, for plaintiff.

Gray Mashburn, Atty. Gen., for the State.

NORCROSS, District Judge.

Plaintiff by its Bill of Complaint prays for a decree against defendants requiring them to account to and return to plaintiff the amount of $92,866.71, in cash and bonds as being held by them in excess of the amount authorized by the laws of Nevada to be so held because of the business being done by plaintiff in the State of Nevada.

Plaintiff is a Utah Corporation with principal place of business in the City of Salt Lake, but transacting business also in the several surrounding states. The complaint alleges that in the year 1930 the investment liability to resident investors of the State of Nevada reached the maximum sum of $439,850.65, and at that time plaintiff had on deposit with the State Treasurer of Nevada, United States Bonds in the face amount of $100,000, as and in the manner prescribed by the laws of Nevada; that said deposit continued to be held under the statute as reenacted with amendments in 1931 and ever since has been so held, together with interest accrued and collected thereon, which interest at the time of institution of this suit totaled the sum of $13,866.71.

On August 17, 1933, the Bank Commissioner of the State of Utah, as Building and Loan Commissioner of that State, took over the plaintiff corporation for the purposes of liquidation or reorganization and thereafter on July 7, 1934 a plan of reorganization was perfected which met with the general approval of investors throughout the several states. The investment of members in plaintiff corporation at the said time of suspension was determined to have been $23,936,184.08. Under the plan of reorganization and as a part thereof the assets of the corporation were reappraised and determined to be, as of the date of reorganizaton, the sum of $18,242,524.72.

As part of the plan of perfected reorganization to each investor was issued "A" certificates representing 65 per cent of the original claim of each investor. For the remaining 35 per cent there was issued "First Recovery" certificates which are to be paid as a recovery increment after the obligation of plaintiff upon the "A" certificates is fully paid for.

On November 12, 1937, the day preceding the filing of this suit, the liability of plaintiff to citizens and residents of Nevada on investors' claims represented by "A" certificates is alleged to have been determined to be the sum of $96,611.28.

Upon the trial there was introduced a balance sheet as of date August 31, 1937, showing the Assets of the Company to be of the value of $11,814,991.78. The Liabilities were itemized as follows:

"Accounts payable, including
taxes ................. $ 79,017.62
Deferred income—Foreclosure Operations ..... 93,272.72
'A' Certificates .......... 8,668,665.90
Surplus ................ 2,974,035.54"

The figures controlling the applicability of the law to the case are not in serious dispute.

The question of law presented upon the facts of this case is whether the plaintiff is now carrying on deposit with the State Treasurer of Nevada, an amount of securities in excess of the amount required by the laws of Nevada to authorize such company to do business in the State. The State statute regulating the right of Building and Loan Associations, organized under the laws of another State, to do business in Nevada in force at the time this suit was instituted and now in force contains the following provisions:

"Sec. 4. No such company, association or corporation, * * * shall commence or continue to do business * * * unless and until it * * * shall have deposited with the state treasurer the sum of $20,000 in money or in bonds. * * *

"Sec. 5. The deposit as provided for in the next preceding section of this act shall be the minimum deposit, and whenever the total liability to Nevada investors * * * shall exceed one hundred thousand dollars, an additional deposit of securities * * * shall be made with the state treasurer, * * * to the amount of at least twenty per cent of such excess * * * and

when any such association, * * * shall have pledged any of its assets for the benefit of any of its investors other than citizens of Nevada, the amount of the deposit with the state treasurer shall be at least such an amount as will bear the same ratio to its liability to Nevada investors as the amount of such other pledged assets bears to its liability to such other investors, and any such organization which has been organized under the laws of any state other than Nevada, under whose laws any such Nevada organization, in order to do business in that other state, would be required to pledge a larger amount of its assets for the benefit, only, of the citizens of such other state, then the deposit of such foreign organization shall not be less than the amount of assets that such a Nevada organization would be required to pledge if it desired to do business in such other state."

"Sec. 8. Whenever any such depositing association, company or corporation, * * * shall satisfy the state treasurer and the state bank examiner that its liability to residents of this state shall have been reduced, the said state treasurer shall return to such depositor such portion of such security as is in excess of twenty per cent of the remaining liability to such residents of this state but not such an amount as will reduce the security below twenty thousand dollars * * *." (Statutes of Nevada 1931, c. 51, p. 64-66.)

It is the contention of plaintiff that the case presents one main question: "Are defendants required or entitled to hold the bonds of plaintiff as a special deposit against outstanding 'First Recovery' certificates in this State?" Plaintiff contends they are not so required or entitled. Defendants contend that they are so entitled. They further contend that as plaintiff maintains deposits of similar character in the State of Idaho of approximately 35 per cent of its liability to citizens of that state, defendants are entitled to maintain a similar per cent, also, that as the State of Utah requires corporations, organized under the laws of other states, in order to engage in a similar business in that state, to make a deposit of $50,000 plaintiff is not entitled to reduce its deposit with defendants below such an amount. Defendants further contend that by virtue of an amendment of Section 4, as quoted supra, adopted by the Legislature of 1935 (Statutes of Nevada 1935, c. 57, p. 122), inserting therein the provision: "and every such company, association, or corporation which shall sell any of its securities within this state or in any manner become indebted to residents of this state shall, at all times, maintain within this state an amount aggregating at least fifty per cent of its liabilities to residents of this state, which shall be invested in real property situated within this state or in notes secured by first mortgages or first deeds of trust on real property situated within this state, or in such bonds as are in this section described, which bonds shall have been deposited with the state treasurer;"—such amendment requires plaintiff to maintain a deposit equal to 50 per cent of its liabilities.

With respect to the first question above stated it is clear in my opinion that defendants are entitled to hold securities deposited by plaintiff as security against the said "First Recovery" certificates held by residents of the State of Nevada. At the time of the reorganization not all of the assets of plaintiff were set aside as security for the "A" certificates. The balance sheet above referred to of date August 31, 1937 discloses resources of the value of $11,814,991.78. At that time as a part of the company's liabilities the "A" certificates were determined to have a value of $8,668,-665.90, leaving a then surplus in the amount of $2,974,035.54. From this it may be reasonably inferred that after the holders of "A" certificates are settled with there would be a remaining surplus in a substantial amount applicable to the payment of "First Recovery" certificates. There is also an exhibit filed in the case by plaintiff showing that of date December 31, 1937 the value of "A" certificates held by citizens and residents of Nevada including a small amount of such certificates issued, but not delivered, totaled the sum of $107,720.93. That upon the same date such citizens and residents of Nevada held "First Recovery" certificates valued at $96,631.20. A total value of the two certificates as of that date of $204,352.13. Subject to charges that in the meantime may have occurred, this is the amount to secure which defendants are entitled to withhold bonds or securities of plaintiff in accordance with the provisions of Section 8 of the 1931 Nevada Statute quoted supra. Cochran v. United States, 157 U.S. 286, 296, 15 S.Ct. 628, 39 L.Ed. 704, 707; McLean v. Moore, Tex.Civ.App., 145 S.W. 1074.

Relative to the contention made on behalf of defendants that they have the right to retain deposits on a ratio equal to that disclosed by an exhibit offered by defendants but prepared by the secretary of plaintiff company as of date July 22, 1937 and disclosing that in the State of Idaho the total amount of the pledge was then 35.87 per cent of the company's liability to citizens and residents of that state, it appears that at the time the pledge was made the liability of the company to residents of the State of Idaho was in excess of $2,000,000 which amount at the time of the statement had been reduced to $578,337.59, without any reduction in the amount of the pledge. It also appears that the State of Idaho had no statutory provision limiting the amount of the pledge. The certificate referred to gives the per cent of pledge to liability in the State of California as 14.84 per cent, Oregon 14.52 per cent, Wyoming 20.23 per cent and an average for all states where such pledges are made by plaintiff other than Nevada as 18.52 per cent. We think it clear that the high percentage as between pledge liability in the State of Idaho is to be regarded as temporary in character and due to adjustments following the reorganization of the company and not a preference granted to one state as contemplated by the provisions of Section 5 of the Nevada Statute cited supra. There is also the further question of law applicable to that contention which is made with respect to the applicability of the Utah Statute requiring a deposit of $50,000, by any foreign corporation engaging in the Building and Loan business in that state, also, with respect to the amendment of the Nevada Statute requiring a 50 per cent deposit. Nevada had no such provisions in its statute at the time plaintiff company began business in this state. It is well settled that after a corporation in compliance with the statutes of another state has entered into business therein of the character here in question, that a state may not impose additional burdens thereon. It also appears that since the reorganization of plaintiff company it has not continued to do business in the State of Nevada in the way of a sale of certificates or securities or in any other manner than concluding settlement with investors of the time of the reorganization. Bedford v. Eastern Bldg. & Loan Ass'n, 181 U.S. 227, 21 S.Ct. 597, 45 L.Ed. 834; Relfe v. Rundle, 103 U.S. 222, 26 L.Ed. 337; Clark v. Williard, 294 U.S. 211, 55 S.Ct.

356, 79 L.Ed. 865, 98 A.L.R. 347; Yager v. Superior Court, 139 Cal.App. 84, 33 P.2d 451; American B. & L. Ass'n v. Rainbolt, 48 Neb. 434, 67 N.W. 493; Fletcher on Corporations Sec. 5757, p. 9475.

Plaintiff is entitled to a decree requiring a return of a portion of its deposit with defendants based on the value of "A" certificates and "First Recovery" certificates in accordance with the view of law herein expressed. It is so ordered. Counsel for plaintiff will submit for the consideration of the Court Proposed Findings of Fact, Conclusions of Law and Form of Decree.