INVESTORS SYNDICATE OF AMERICA, INC., *v.* M. O. ALLEN, *etc., et al.*

INVESTORS DIVERSIFIED SERVICES, INC., *v.* M. O. ALLEN, *etc., et al.*

(*Nashville*, December Term, 1954.)

Opinion filed May 6, 1955.

EVANS, EXBY, MORIARTY & PETREE, of Memphis, and WIL-
LIAMS, HARWELL, HOWSER & THOMAS, of Nashville, for
appellants.

290

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, and JACK WILSON, Assistant Attorney General, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

These two suits were tried together in the Chancery Court of Davidson County wherein they sought to recover certain taxes which had been paid the State of Tennessee under protest. The cases were consolidated with eight other similar lawsuits, involving the same legal questions, and the parties agreed to abide by the Court's decision in the cases now on appeal.

The Investors Syndicate of America, Inc., and Investors Diversified Services, Inc., are engaged in a type of

business that is subject to taxation under Chapter 187, Public Acts of 1939, as amended by Chapter 127, Public Acts of 1943. These statutes were officially codified and appear as Sections 1248.33 to 1248.40 of the Supplement to the Code of 1950. Both of the complainants are in the investment business. Investors Syndicate of America, Inc., is wholly owned by Diversified Services, Inc., and both corporations are authorized to do business in Tennessee. The latter has about 75 sales agents in Tennessee, and they work out of four divisional offices, to wit, Memphis, Nashville, Chattanooga and Knoxville. The citizens of this State have invested large sums of money in investment certificates. The record discloses certificate liability for the year 1950, $7,945,291.67, for the year 1951, $7,363,600.60, and for the year 1952, $6,-886,720.28. The collections at the Memphis office run between $57,000 and $65,000 per month. The total monthly collections for all four divisional offices will approximate more than $2,000,000 a year. These amounts are important as showing, (1) the extent of business carried on in this State; (2) the total investments of certificate holders; and (3) whether or not the tax that is levied and collected by the State is fair and reasonable or arbitrary, illegal and confiscatory.

*Investors Syndicate of America, Inc., and Diversified* Services, Inc., are chartered under the laws of Minnesota and both occupy the same offices in the City of Minneapolis; substantially the same persons serve as officers of both corporations. Investors Diversified Services, Inc., is known as the parent company and it organized Investors Syndicate of America as an aid to carry on the general investment business. It further appears without any dispute that Investors Syndicate of America, Inc.,

has entered into a written contract with the parent corporation whereby through its several managers, and sales organization, offers for sale investment certificates to the public. It is not necessary to detail other numerous duties these divisional managers and salesmen perform as a working force in the organization. The complainant, Investors Syndicate of America, Inc., has steadfastly insisted throughout this litigation, that the parent company, Investors Diversified Services, Inc., is acting in its behalf but in the capacity of an independent contractor. Likewise, the parent company, Investors Diversified Services, Inc., has contended that the divisional managers and selling agents, or salesmen, are acting in its behalf but as independent contractors. Thus it is said that neither company is carrying on any intrastate activities in Tennessee.

The Chancellor held that these complainants are "subject to the provisions of Chapter 187 of the Public Acts of 1939, as amended by Chapter 127 of the Public Acts of 1943; that these taxing statutes are not unconstitutional; that the complainants are not engaged in business that is exclusively interstate in character; that the record shows their business to be both 'interstate and intrastate in character'; that the tax in question is not strictly a tax on gross receipts, but is one which is measured by reference to gross profits and is to be distinguished in this respect. Furthermore it is in lieu of all other taxes."

The bills were dismissed and the complainants appealed and the ruling of the Chancellor is made the basis of assignments of error as follows:

(1) The Chancellor was in error in holding that the taxing statute, here involved, was in lieu of all other

taxes, because Chapter 187, Public Acts of 1939, as amended, Code Section 1248.164, provides otherwise.

(2) The court erred in holding that complainants are subject to the provisions of Chapter 187, Public Acts of 1939, as amended, because the Legislature did not intend to apply it to the activities of complainants.

(3) That the statute is unconstitutional, because it is a tax upon ''the solicitation of interstate business'' and repugnant to the Commerce Clause of the Constitution; ''that the State is attempting to tax the gross receipts of a foreign corporation engaged in interstate commerce.''

The taxing statute which is assailed by complainants, and is the authority for levying the tax in controversy, provides:

*"1248.33. Levy of special privilege tax measured by gross profits or income.*—Every corporation, company, partnership, or individual writing, issuing, servicing and/or collecting installments on contracts now being written or issued or contracts heretofore written, issued and sold in this state, commonly known as income reserve contracts, installment investment trusts, including investors' syndicates, investment associations and the like (each of which is hereinafter called 'investment company'), or which corporation, company, parnership, or individual shall be engaged in servicing contracts now being issued or heretofore issued or collecting installments thereon, shall be deemed to be engaged in a business hereby declared to be a privilege; and for the purpose of providing revenue for the state, there shall be levied against and collected from each such 'investment company' a special tax measured by gross

profits or income, as hereinafter defined, of such investment company or such portion of such gross profits or income as shall be allocated to the state, as hereinafter provided.

"Each investment company issuing its certificates, investment contracts, income reserve contracts, or instruments of like nature, pursuant to applications or orders therefor, solicited within the state, shall be deemed to be engaged in business within the state, and shall be subject to the terms and provisions of this law."

"*1248.34. Companies subject to law.*—Each investment company issuing certificates, investment contracts, income reserve contracts, or instruments of like nature, which are delivered in the state, shall be deemed to be engaged in business within the state, and shall be subject to the terms and provisions of this law. Each investment company engaged in the business of writing, issuing and/or servicing or collecting installments upon said investment contracts, being issued in this state or heretofore issued, shall be subject to the terms and provisions of this law."

Section 1248.37 of Supplement to the Code provides that the taxes imposed in lieu of and substituted for *all other* taxes imposed by any law upon property owned by such investment companies and located in Tennessee shall be exempt. The exemption expressly includes "all other privilege taxes, such as taxes upon or for the use of the franchise, capital, notes, reserves, surpluses, loans, accounts and other income and profits of such investment companies". (See further provisions of the statute.) It should be noted in this connection that complainants relied upon the foregoing provisions of the Code and

failed to pay annual corporation filing fees, excise or franchise tax returns, as required by law, thus each availing itself of the exemptions from all such taxes.

For the purpose of clarifying an important question relating to whether or not these complainants were doing solely an interstate business, we respond to the insistence that Investors Syndicate was a nonresident, and it received and approved (or disapproved) contracts forwarded by Diversified Services, its managers and solicitors, who were not its agents but acted as *independent contractors*.

The written contract between these corporations is so worded as to convey the thought that Diversified Services was an independent contractor. But the contract itself is not solely determinative of the true relationship beween them. The argument of able counsel for complainants is based upon the erroneous assumption that an independent contractor cannot be an agent. The mere fact that the words "independent contractor" are used in an attempt to determine the legal relationship between the complainants, and thus binding upon the State of Tennessee in its sovereign right to levy a tax, is not conclusive of the question. The contract here relied on is an attempt by complainants to execute an agreement, *which, by its terms, forecloses the issue as to the nature* and extent of their activities in carrying on their business in this State. The contract in question is binding alone upon the parties thereto as to their relationship. But the State is not concluded by its terms from showing that Diversified Services, Inc., is now, and has been acting as the agent of Investors Syndicate of America, Inc. This question was settled by this Court in *Interstate Amusement Co.* v. *Albert,* 128 Tenn. 417, 161 S. W. 488, 491, holding as follows:

"A corporation can act only through an agent or agencies; but it does not follow that a foreign corporation can evade our statutes by an insistence that it has no recognized agent in this state, if, under the facts of the case, it is clearly apparent that it is by means of agencies organized as a part of its ordinary business conducting that business continuously and regularly in this state, and deriving therefrom an income."

The arrangement between these investment companies is not "occasional or casual". But it is a regular course of business in most of the States of the Union. It is almost conclusive that Diversified Services, Inc., is acting for and on behalf of Investors Syndicate of America, Inc., in many ways other than soliciting business. We are not in duty bound to hold that the relationship is that of an independent contractor merely because the immediate parties in interest have chosen to call it by that name. "All tax measures when called in question in the courts should be determined by their practical operation and effect rather than by what they are named." *Madison Suburban Utility Dist.* v. *Carson,* 191 Tenn. 300, 232 S. W. (2d) 277, 280.

The Restatement of the Law of Agency, Section 1, defines agency as follows:

"(1) Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

The following comment from the Restatement of the Law of Agency, page 10, is very pertinent:

"An agent may be one who, to distinguish him from a servant in determining the liability of the principal, is called an independent contractor. Thus,

the attorney at law, the broker, the factor, the auctioneer, and other similar persons employed either for a single transaction or for a series of transactions are agents, although, as to their physical activities, they are independent contractors.''

Contention is made by appellants' counsel that ''on December 31, 1940, that complainants ceased to sell or issue any investment certificates or receive applications for same'' and the taxing Act was not amended until February 11, 1943, and that *all former transactions* 'were interstate; and the statute does not contain a provision for the allocation of the business prior to the amendment. Counsel rely upon *Western Loan & Building Co.* v. *Franks,* D. C. 23 F. Supp. 765; and *MacMurray* v. *Sidwell,* 155 Ind. 560, 58 N. E. 722. We cannot follow these cases in view of contrary opinions such as, *Mengel Box Co.* v. *Stevens,* 141 Tenn. 373, 210 S. W. 635; *Broadacre Dairies* v. *Evans,* 193 Tenn. 441, 246 S. W. (2d) 78; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Rhea County,* 194 Tenn. 167, 250 S. W. (2d) 60. In addition to these authorities the State's counsel insists that the statutes are expressly contrary to the complainants' insistence. The statute provides for an assessment upon every corporation ''engaged in servicing contracts now being issued *or heretofore issued or collecting installments thereon''.* (Emphasis ours.)

Contrary to complainants' insistence this is not a tax on *gross receipts* or upon *gross profits.* But it is a *privilege tax,* and the gross receipts are used solely to measure the tax. Applying the formula as provided in Code Section 1248.35 to business operations partly within and partly without the income allocated to Tennessee would be about two percent or one and one/half percent

of the gross profits or income allocated to Tennessee. This is neither arbitrary nor confiscatory, and is not in violation of the Commerce Clause of the Federal Constitution. *Reynolds Tobacco Co.* v. *Carson,* 187 Tenn. 157, 213 S. W. (2d) 45; and *General Shoe Corp.* v. *Stokes,* 181 Tenn. 286, 181 S. W. (2d) 146.

In the Reynolds Tobacco case, supra [187 Tenn. 157, 213 S. W. (2d) 49], the Court cites and approves the holding in *International Harvester Co.* v. *Evatt,* 329 U. S. 416, 67 S. Ct. 444, 91 L. Ed. 390, as follows:

" 'A state's tax law is not to be nullified merely because the result is achieved through a formula which includes consideration of interstate and out-of-state transactions in their relation to the intrastate privilege.' "

A typical case of doing business in interstate commerce is where a foreign corporation sends its representative into another state to solicit business, and later on sends a representative into such state to service the article sold. Of course such transactions are not subject to state taxation. We do not have such a case before us at this time. The counsel cite numerous decisions of the Supreme Court of the United States holding "that a state cannot impose a tax upon the 'solicitation' of interstate commerce". To this we give our unqualified assent. The cases cited are to be distinguished from the case now before us in that complainants' business is not confined alone to "soliciting" business.

In response to complainants' further contention that the tax in question "is violative of the obligation of a contract", it is not seriously controverted that a corporation has no vested right to exercise any privilege free from taxation. The privilege of a foreign corpora-

tion to do business within the State is subject to the payment of a tax that is fair, reasonable and uniform as applied to all and every similiar corporation. The fact that the tax is imposed for the privilege of doing a corporate business in this State, and is later increased, does not impair the obligation of a contract. The contention that it does is purely theoretical. In *Mengel Box Co.* v. *Stevens,* supra [141 Tenn. 373, 210 S. W. 636], the Court holds adversely to the complainants' contention, as follows:

"By the payment of the sum exacted of it in 1899, the complainant merely obtained license to do business in this state. The state was not cut off from imposing a higher license or from changing its method of privilege or excise taxation. That is what the state has done."

To the same effect is *McPhillips Manufacturing Co.* v. *Currey,* 241 Ala. 366, 2 So. (2d) 600.

The State of Tennessee has not discriminated against complainants, but has made an assessment in keeping with a formula prescribed by statute and applies to all corporations exercising the same privilege.

Counsel for the complainants base their entire argument upon the theory that the complainants are doing business *exclusively interstate in character.* Among the cases cited on the brief to sustain this contention is *Spector Motor Service* v. *O'Connor,* 1951, 340 U. S. 602, 71 S. Ct. 508, 512, 95 L. Ed. 573, and others. But we think it supports the legality of a tax upon a business that is both intrastate and interstate in character. This was the conclusion of the Chancellor and, in support of his finding that complainants were so engaged, he relied on and cited the following statement from *Spector Motor Services* v. *O'Connor,* supra:

"Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate."

The only comment appellants' counsel make with reference to this authority is that the cases cited by the Court in support of it differ factually from the case at bar. This is a mere conclusion of an able pleader. We could not agree with them without reaching the conclusion that the Supreme Court of the United States did not know what it was talking about. This we decline to do.

We do not question the correctness of complainants' insistence that the State of Tennessee "is without power to impose an excise tax or privilege tax upon a business which takes place *beyond its borders.*" The State has not attempted to impose such a tax in the instant case; nor has it imposed a tax upon "gross income" or "gross receipts" of a corporation engaged exclusively in interstate commerce. Moreover the record before us does not sustain the contention of the complainants that they have no property in this State, and are not engaged in any investment business. The fact that they are not taking or receiving applications for investment certificates at present is not conclusive of any right of exemption from the tax; nor is it true as a matter of law or fact that they are not engaged in business. Neither has withdrawn from the State and, as heretofore pointed out, both are still authorized to do an investment business in Tennessee. The investment contracts are

being serviced, and the holders of investment certificates in Tennessee are paying annually to the parent corporation approximately $2,000,000. There is no suggestion that these contracts are being serviced *gratuitously.*

As further proof of the fact that complainants are not doing exclusively an interstate business, we note the following facts: The complainants, who are qualified to do business in Tennessee, are thereby exercising a right which must be characterized as ''property''. The amount of money on deposit in the banks in the four large cities of the State to the credit of Diversified Services, Inc., is not the property of the several branch managers. Moreover, the deposit with the defendant, Commissioner of Banking and Insurance, for the purpose of complying with the law, is certainly the property of complainants. It is most valuable as securing to the complainants the right to carry on a business as authorized by Chapter 187, Public Acts of 1939, as amended. The several managers, and their agents-solicitors, are undoubtedly serving the interests of the complainants. The method whereby they attempt to disassociate themselves from the corporate setup is for the sole purpose of circumventing the law, and thus enable complainants to do an intrastate business contrary to the statutes of Tennessee.

The method of ''selling certificates'' is correctly pointed out in the State's brief as follows:

''The soliciting agent or salesman receives an application to purchase a certificate and receives the payment therefor. The salesman takes or sends the application and the money to the divisional manager. The divisional manager in turn, either deposits the money in the bank account maintained

in Tennessee in the name of Investors Diversified Services, Inc. or sends it, along with the application, to the joint office of Investors Syndicate of America, Inc. and Investors Diversified Services, Inc. at Minneapolis, Minnesota. When the application reaches Minneapolis, it is first examined by officials of Investors Diversified Services, Inc., and those officials first determine whether the prospective purchaser is legally qualified to make the purchase. If the officials of Investors Diversified Services, Inc. approve the application, it is then passed to the officials of Investors Syndicate of America, who are located in the same office, and those officials either accept it or reject it. If it is accepted, the certificate is issued by Investors Syndicate of America, delivered to the officials of Investors Diversified Services, Inc., and the latter send it to Tennessee to the divisional manager who, in turn, sends it to the salesman to be delivered by him to the purchaser. (R 57, 69-70, 78-80).''

Considering the foregoing, and for other reasons expressed in this opinion, we find, and so hold, that the complainant, Investors Diversified Services, Inc., the parent corporation, is engaged in both intrastate and interstate activities in this State, and that it is subject to the tax in question. We likewise find, and so hold, that the complainant, Investors Syndicate of America, Inc., is carrying on both intrastate and interstate activities in Tennessee through its agent the complainant Investors Diversified Services, Inc., and it is also subject to the tax in question.

■ Finally it is our well considered opinion that when a foreign corporation is qualified to do business in this State, and is, by reason of its qualifications, granted

exemptions from taxes, other than that which is imposed upon these complainants under Code Section 1248.37, they are estopped from defending on the ground that Chapter 187, Public Acts of 1939, as amended, does not apply to them.

The assignments of error are overruled, and the Chancellor's decree is affirmed.