MURDOCK ACCEPTANCE CORPORATION, Plaintiff in Error, v. CITY OF MEMPHIS and Frank T. Tobey, Mayor, and Claude A. Armour, Joseph P. Boyle, John T. Dwyer and Oscar P. Williams, Commissioners, Defendants in Error.—288 S. W. (2d) 459.

Western Section. November 3, 1955.

Petition for Certiorari denied by Supreme Court, March 9, 1956.

Lowell W. Taylor and William I. McLain, both of Memphis, for appellant.

Jesse Vineyard and Frank B. Gianotti, Jr., both of Memphis, for appellees.

BEJACH, J.   The parties will be styled as in the lower court, complainant and defendants, the complainant being the appellant in this court, and the defendants, appellees here.

The sole question involved in this cause is whether or not complainant is liable for the privilege tax levied against automobile dealers, in addition to the privilege tax or license paid for engaging in its principal business, viz., that of purchasing notes secured by conditional sales

contracts, principally upon automobiles, and lending money upon notes secured by chattel mortgages. This particular suit seeks to recover the total sum of $300.75, covering such privilege taxes or licenses for the years 1953, 1954, and 1955, which were paid under protest.

The facts of the case are undisputed, only one witness having testified, namely, Mr. J. Walter Richards, branch manager of the Memphis branch of complainant. From his testimony it appears:

Complainant is engaged in the business of purchasing notes secured by conditional sale contracts, principally upon automobiles, and lending money upon notes secured by chattel mortgages. Complainant has paid all State of Tennessee, Shelby County, and City of Memphis privilige taxes specifically applicable to this business. Upon default of its mortgages or conditional sale contracts, complainant recovers the cars covered by same and advertises them for sale by notices posted in accordance with the requirements of the conditional sales law of Tennessee, or the requirements of the chattel mortgages, or by private sale when a waiver of public sale and advertisement has been executed. After recovery of the cars and pending sale thereof, the cars are placed upon a lot maintained by complainant at the rear of its premises, number 400 Union Avenue, Memphis, Tennessee. This lot extends from the rear of the office building over to Monroe Avenue and is enclosed by a wire fence. The lot is accessible from both Union and Monroe Avenues. There are no signs on the lot to indicate that a used car business is being carried on or conducted on the premises. No signs or other advertisements are placed upon the cars while they remain upon complainant's lot. A billboard is maintained on the wire fence fronting on Monroe Avenue for the purpose of posting notices of sale

required by the Tennessee conditional sales act, or its chattel mortgage contracts. Complainant is not listed in the Memphis City Directory or Telephone Directory as an automobile dealer, nor are there any signs or other advertisements on or about said lot or premises to indicate that the cars are for sale. Complainant does not advertise the sale of cars recovered by it through newspaper, radio, television, or other advertising media. At most conditional sales advertised, and at most sales resulting from foreclosure of chattel mortgages, complainant bids in the property, there being outside bidders in but few instances. After it has acquired title to automobiles thus sold, complainant proceeds to resell these cars. Most of its sales are made wholesale, or to retail used car dealers. Occasionally some individual buys one of the cars acquired by complainant. Many of the cars offered for sale have been wrecked and are resold to salvage dealers, or to used parts concerns. In many instances, the cars recovered were originally sold by a dealer, and the contract assigned under terms which require repurchase,—in which cases the recovered cars are repurchased by the dealers involved. Complainant's business of selling cars is confined to the second hand automobiles acquired by it in the manner just stated. It does not buy cars or accept cars as a trade-in on any of its sales. It does not operate and maintain an independent business at a separate location. The lot on which its cars are kept, and from which they are sold, is in charge of an employee of complainant's collection department, and is not in charge of a manager of a second hand car sales department. No salesmen or mechanics are employed. No help is employed for reconditioning cars. Complainant's business of selling used automobiles is strictly limited to sales of those automobiles repos-

sessed or taken possession of by it on default of obligations secured by such automobiles.

The privilege tax involved in this suit is set out in the 1950 Supplement to the Code of Tennessee in Section 1248.2 at Item 8 of same, which is as follows:

"Item 8. Automobiles. (a) Dealers.—Manufacturers' Agencies:

"Each person maintaining an office or place of business as agent or representative of any manufacturer or jobber of automobiles, whether a stock of automobiles, trucks or parts is carried at such office or place of business or not, shall be classified as 'dealer' and taxable as such.

"Each person engaged in dealing in, buying or selling automobiles:

"In cities of 100,000 inhabitants or over, each per annum . . . $100.00.

* * * * * *

"Persons dealing in, buying or selling second-hand automobiles or parts, either as the principal business or as incidental business, shall be taxable under this item and subsection."

Complainant insists that the decision in the instant case should be controlled by the decisions of the Supreme Court in the cases of Shelton v. Silverfield (Etterman v. Shelton), 104 Tenn. 67, 56 S. W. 1023. These were two cases decided by the Supreme Court in one opinion. In the case of Shelton v. Silverfield, the defendant was a pawnbroker who had paid a pawnbrokers' privilege tax, required by the Act of 1899, and was regularly licensed to do business as such. In the course of his business, Silverfield made loans of money secured by articles of personal property pawned as security for same,—many

of such pawns being used clothing. Shelton, the County Court Clerk of Davidson County, contended that Silverfield was liable for an additional privilege tax, being that levied on dealers in second hand clothing, because Silverfield, in connection with his business, sold such articles where same had not been redeemed.

In the case of Etterman v. Shelton, the same County Court Clerk contended that Etterman, a merchant who paid the merchants' privilege tax, should also pay the privilege tax as a dealer in second hand clothing; because part of the merchandise sold by him was of that classification. The Supreme Court held, in both cases, that the sale of second hand clothing was purely incidental to the main business of Silverfield and Etterman, respectively; and that Silverfield's license as a pawnbroker authorized him to realize on unredeemed pledges by sale of same without paying an additional license for sale of second hand clothing; and that Etterman's general license as a merchant authorized him to sell articles of second hand clothing, as well as articles of new clothing without paying an additional tax for sale of second hand clothing,—his license or privilege tax as a merchant covering both.

The argument of complainant's able solicitor is that the sales of second hand automobiles made by complainant in the instant case, are purely incidental to the main business of complainant, and are exactly analogous to the situation of the pawnbroker in the Silverfield case. Defendants' solicitors, on the other hand, contend that the facts of the instant case, must be controlled by the later decision of our Supreme Court in the case of Securities Investment Co. v. Cobb, 172 Tenn. 418, 113 S. W. (2d) 61. In that case, the primary business of the Securities Investment Co., like that of complainant in

the instant case, was that of lending money upon notes secured by chattel mortgages upon automobiles, and of purchasing conditional sales contracts upon automobiles, for which business it had paid privilege taxes specifically applicable to that business. Like complainant in the instant case, the Securities Investment Co. resold automobiles which it had repossessed or taken under foreclosures on default of loans secured by same; and, like complainant in the instant case, it contended that having paid the privilege tax for its principal business, it was not liable for an additional tax levied upon "persons dealing in, buying or selling second-hand automobiles or parts". The privilege tax there involved was embodied in the Revenue Act of 1931, as amended by Chapter 194, Section 1 (7), Public Acts of 1935. The exact language of the revenue act there involved was as follows:

" 'All persons maintaining an office or place of business as agent or representative of any manufacturer or jobber of automobiles, whether a stock of automobiles, trucks, and/or parts is carried at (as) such office or place of business or not, shall be classified as "dealers" and taxable as such.(The schedules are omitted.)

" 'Provided that the privilege on agents and salesmen herein levied shall not apply to agents or salesmen of dealers paying the dealers' privilege tax above provided, in the county where the dealer pays.' Pub. Acts 1931, Second Ex. Sess., Art. 3, § 1, Item 9.

" 'Provided that persons dealing in, buying or selling second-hand automobiles or parts shall be taxable under the item.' Pub. Acts 1935, c. 194, § 1(7), Amending Pub. Acts 1931, Art. 3, § 1, Item 9(a).' '

In disposing of the Securities Investment Co. case, the opinion of the Supreme Court, written by Mr. Justice Chambliss, says:

"It is the last-quoted proviso that we have for construction here.

"It is conceded that the Legislature may carve out a specified part of a general business and declare it a privilege, but it is said that the intention of the Legislature to do this must appear by express language, and that the language of the statute in question reveals no intention to apply this tax to the appellant company under the facts stipulated, it having paid a privilege tax for the conducting of its business, and the sale of cars by it being merely incidental to and properly connected with the business for which it has been licensed. The holding in this court in Shelton v. Silverfield, 104 Tenn. 67, 56 S. W. 1023, is cited as authority for the contention made by the company. That was a case arising under the Revenue Act of 1899, chapter 432, levying a tax on all merchants, and by section 4, on (a) dealers in second hand clothing and (b) pawnbrokers. Silverfield & Feldman were pawnbrokers and paid the privilege tax prescribed for that business, and it appeared that in the regular course of that business they loaned money on articles and sold these articles after default, and then resold them in order to realize the debts, these articles including second hand clothing. The court held that these pawnbrokers were not liable for the privilege tax levied on dealers in second hand clothing by paragraph (a) under section 4 of the act; that the sale so made formed an essential part, or feature, of the business. We think the instant case is to be distinguished, giving con-

sideration to the language above quoted, in that it does not appear to be contended in this case that, under the facts stipulated, the business of buying and selling of automobiles by the securities company is an 'essential part' of the business for which it has been licensed, the argument going no further than the contention that the selling and buying of these cars by the appellant is 'merely incidental to, and properly connected with,' the occupation for which it has paid a license. The facts differ. Unlike the case of the pawnbroker, it appears from the stipulation that the appellant operates and maintains a practically independent business as a separate location. The decree of the chancellor contains a fair summary of the facts as follows:

" 'The Securities Investment Company has established and maintains a place of business, a used car sales lot, at 121 Seventh Avenue, North, from which automobiles purchased by it in the enforcement of conditional sales contracts at public auction are being offered for sale and sold to the general public; that it takes in other cars in trade as part payment, which cars are likewise sold to the public; that the business so conducted by it is in charge of a manager of said second hand car sales department; that a regular salesman is employed and likewise necessary mechanics and help are employed for reconditioning said cars; that said business is conducted in the same manner as other second hand car dealers conduct their business except that it buys no second hand automobiles except those originally sold by them under authority of conditional sales contract, or as heretofore stated as part payment on same.'

"While it is true that this sales business has its origin in the primary business of the securities company, and the title to the cars dealt in may be traced back to this primary source, we think no more can be claimed for the company than that experience has demonstrated that it was desirable and profitable for this loan and finance company to enter and conduct what is in fact, and is generally regarded as an independent business operation, conducted for profit and in competition. We think the principle of isolated transactions, recognized and applied by this court in construing other privilege tax statutes, such as real estate brokers and note shavers, has application, by analogy, here. In other words, perhaps the true test is whether or not the situation presents a case of conducting a business, where the business of buying and selling secondhand automobiles, as distinguished from doing occasional, sporadic, and, in this sense, incidental selling. See Wender v. Lobertini, 151 Tenn. 476, 267 S. W. 367; Trentham v. Moore, 111 Tenn. 346, 76 S. W. 904; Anderson v. Mason, 8 Tenn. Civ. App. 42, 8 Higgins 42. Applying this rule, we are of opinion that the tax here questioned, levied upon 'persons dealing in, buying or selling secondhand automobiles,' that is, so engaged as a business, is fairly to be construed to apply to appellant company, despite the fact that it pays a privilege tax for dealing in chattel mortgage notes and conditional sales contracts." Securities Investment Co v. Cobb, 172 Tenn. 418, 420-423, 113 S. W. (2d) 61.

■ ■ Complainant undertakes to distinguish, in turn, the facts in the instant case, from those of the Securities Investment Co. case, by contending that com-

plainant in the instant case does not operate its sale of used cars at a separate location, does not take in other cars in trade, and does not employ a mechanic to recondition its cars. We think that the distinction is insufficient to cause a different result to be reached. The mere fact that it does some, but not all of the things authorized by a license for operating as a used car dealer, is not sufficient to exempt it from paying the privilege tax. A person, firm, or corporation paying a privilege tax or buying a license to engage in a certain business, may exercise some or all of the functions authorized by such license, at its or their option. But where it exercises some but not all of the functions authorized by the license or privilege tax, that circumstance neither exempts it from the tax, nor entitles it to reduction of same.

The decisions of our Supreme Court in B. & B. Chevrolet Co. v. Hall, 170 Tenn. 540, 98 S. W. (2d) 82, 83, and Neuhoff Packing Co. v. City of Chattanooga, 191 Tenn. 395, 234 S. W. (2d) 824, are not in point as applied to the facts of the instant case. In the case of B. & B. Chevrolet Co. v. Hall, the Supreme Court held that the Chevrolet Co. was not liable for an additional privilege tax for "selling or displaying automobiles for sale at any other place than its principal place of business", where the company in question displayed and sold its automobiles on the lot immediately adjoining its regular place of business. In the case of Neuhoff Packing Co. v. City of Chattanooga, the Supreme Court held that the packing company was not liable for the privilege tax of doing business in Hamilton County, where its regular place of business was in Davidson County, and from which place of business it shipped to fill orders in Hamilton County, taken by employees there stationed for the

purpose of soliciting business. The facts of the instant case, and the result reached in it, by both the Chancellor and this Court, are much more nearly analogous to those involved in the cases of Sims v. Carter, 173 Tenn. 263, 116 S. W. (2d) 1031, and Commercial Standard Insurance Co. v. Hixson, 175 Tenn. 239, 133 S. W. (2d) 493, 495. In Sims v. Carter, the Supreme Court held that Sims was liable for the additional privilege tax levied against wholesale butchers or dealers in fresh meats or poultry, notwithstanding he had paid the privilege tax required of "produce dealers". The case of Commercial Standard Insurance Co. v. Hixson held that the insurance company there involved was liable for the additional privilege tax for "insuring titles", notwithstanding the statute under which it paid its general privilege tax as an insurance company, provided that such taxes should be "in lieu of all other taxes".

█ Citation of additional authorities or comparison of the facts of the instant case with those of other reported decisions is unnecessary, however, because the instant case is controlled, in a final analysis, by construction of the particular revenue act imposing the privilege tax involved in this case. The language of that statute is quoted above, being Section 1248.2, Item 8, Code Supplement of 1950. The particular words therein which control are:

"Persons dealing in, buying or selling second-hand automobiles or parts, either as the principal business or as incidental business, shall be taxable under this item and subsection."

We think these words are determinative of the issue involved in this cause. The words "buying or selling" are disjunctive, not conjunctive, and the provision that the tax applies where the business is conducted "either

as the principal business or as incidental business" concludes the matter against complainant and appellant in the instant case.

The decree of the Chancellor will, accordingly, be affirmed. The costs of the cause, both in the lower court and in this Court, are adjudged against complainant and its surety on the cost bond and appeal bond.

Avery, P. J. (W.S.), and Carney, J., concur.