IN RE the MARRIAGE OF:
Daniel WEISS, Respondent,

v.

Carol E. WEISS, Appellant.†

Court of Appeals

*No. 84–123. Submitted on briefs October 17, 1984.—
Decided January 21, 1985.*
(Also reported in 365 N.W.2d 608.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Harry W. Theuerkauf* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Levy & Levy, S.C.,* with *Dorothy H. Dey* of counsel, of Cedarburg.

Before Wedemeyer, P.J., Moser and Nettesheim, JJ.

NETTESHEIM, J.  This is an appeal from the terms of a judgment of divorce awarded to the respondent (Daniel) against the appellant (Carol). The issues are: (1) whether the marital estate was properly reduced by $5000, which was a gift from Daniel's parents and was used to purchase the parties' homestead; (2) whether money due Daniel upon withdrawal from his former law firm was a marital asset; (3) whether the physical assets of Daniel's new law firm were properly valued; (4) whether the marital estate was properly reduced by $7000, which represented Daniel's maintenance, insurance and living expenses and two adult children's college expenses incurred by Daniel during the pendency of the action, and (5) whether the trial court erred by failing to value Daniel's interest in two real estate limited partnerships and instead awarding Carol an interest in future distributions. We affirm the trial court's method of dividing Daniel's interests in the limited partnerships.

We reverse the trial court's holdings as to the remaining issues, and we remand for a new property division and a consideration of its impact upon the maintenance award.

The parties were married on April 11, 1963. At the time of trial, they had three children: Michael Daniel, an adult attending Brown University, Providence, Rhode Island; David Jeffrey, an adult attending the University of Wisconsin, Madison, Wisconsin; and Stephanie, a minor in high school.

Daniel is forty-nine years old and a practicing attorney in the Milwaukee area. Shortly before he filed for divorce, he sold his twenty percent interest in his former law firm and began practicing law as a sole practitioner. The trial court determined he was capable of earning $60,000 a year.

Carol is forty-nine years old and is a college graduate. After the marriage, she briefly worked as a teacher. She has not worked outside the home for twenty years. During the marriage she kept the home, raised the children and in general assisted Daniel in the furtherance of his career. Daniel filed a petition for divorce on April 12, 1983. On December 20, the trial court issued its findings of fact, conclusions of law and judgment of divorce. Carol appeals.

## Gifted Property

We first consider whether the trial court properly granted Daniel's post-judgment motion to reduce the marital estate by $5000 on the basis that said amount was a gift and not subject to property division under sec. 767.255, Stats.[1]

---

[1] Section 767.255, Stats., provides:

Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section . . . .

Shortly after the marriage, Daniel's parents gave him $5000. The money was used to assist in the purchase of the parties' residence, which was jointly titled in both Daniel's and Carol's names. The trial court excluded this amount from the marital estate.

■

Generally, a property division upon divorce is within the sound discretion of the trial court. *Jasper v. Jasper*, 107 Wis. 2d 59, 63, 318 N.W.2d 792, 794 (1982). However, the application of a statute to a particular set of facts is a question of law. *Maxey v. Redevelopment Authority of Racine*, 120 Wis. 2d 13, 18, 353 N.W.2d 812, 815 (Ct. App. 1984). Therefore, whether the property at issue in this case is marital property subject to division under sec. 767.255, Stats., presents a question of law. As such, we owe no deference to the trial court's determination. *First National Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

■

In this case, the trial court did not have the benefit of *Bonnell v. Bonnell*, 117 Wis. 2d 241, 248, 344 N.W.2d 123, 127 (1984), where the Wisconsin Supreme Court held that:

The transfer of separately owned property into joint tenancy changes the *character* [emphasis added] of the ownership interest in the *entire* [emphasis in original] property into marital property which is subject to division.

The property becomes marital property because each of the joint tenants has an equal interest in the entire property during the tenancy, regardless of unequal contributions at the time the joint tenancy is created. *Id.* at 247, 344 N.W.2d at 126–27. *See* sec. 700.17 (2) (a), Stats. The property no longer retains its character as separate property but rather becomes part of the marital estate subject to division under sec. 767.255, Stats. Although *Bonnell* involved a conversion of separate, inherited prop-

erty into joint tenancy, its logic also applies to a conversion of gifted property into joint tenancy.

Daniel argues that this case can be distinguished from *Bonnell* because in *Bonnell* there was a clear intent on the part of the donor spouse to make a gift of her separate inherited property by way of a joint tenancy to the donee spouse. Daniel argues that no such intent exists in this case.

While the *Bonnell* decision does speak of the wife's intention to make a gift of the inherited property to her husband, the gift resulted from the conversion of her separate property to joint tenancy. *Bonnell* recognized the general principle " 'that a spouse may by agreement, either express or implied, or by gift, transmute an item of separate property into marital property.' " *Bonnell* at 245, 344 N.W.2d at 126, quoting *Daniels v. Daniels*, 557 S.W.2d 702, 704 (Mo. App. 1977). Here also, Daniel has manifested his intent to make a gift by the conversion of his separate property into a joint tenancy with Carol. Just as *Bonnell* observed that "[i]t is clear that Mrs. Bonnell intended to create a joint tenancy in the subject properties," *id.*, so also is it clear in this case that Daniel harbored a similar intent.

Daniel also argues that the trial court's reduction of the marital estate by the $5000 gift should be affirmed on the basis of this court's holding in *Anstutz v. Anstutz*, 112 Wis. 2d 10, 331 N.W.2d 844 (Ct. App. 1983). Daniel correctly concludes that the tracing feature of *Anstutz* applies to gifted property as well as inherited property. However, the court of appeals in *Anstutz* simply noted that the property division statute envisions a return of inherited property to the heir prior to the division unless the inherited funds are so commingled with the parties' other assets that it is not possible to determine the present value of the inheritance or whether the inheritance has been preserved. *Id.* at 12, 331 N.W.2d at 845–46. *See also* sec. 767.255, Stats.

*Anstutz,* however, is pre-*Bonnell* and, unfortunately, does not state how the residence which was purchased in part with the inherited property was titled. Furthermore, *Bonnell* does not discuss *Anstutz.*

*Plachta v. Plachta,* 118 Wis. 2d 329, 334, 348 N.W.2d 193, 196 (Ct. App. 1984), holds that the statute exempts gifted property from the marital estate if it retains its identity *and* character. The mere fact that the identity of the property can be traced under *Anstutz* does not entitle the property to exempt status if its character has been converted under *Bonnell.* This is the factor overlooked by Daniel in his argument. The $5000 gift to Daniel, in fact, is no longer gifted property because its character has been changed by virtue of the conversion into a joint tenancy in real estate. The tracing feature of *Anstutz* does not apply because there is no longer any separate, gifted property to trace. As a result, the identity/tracing concepts of *Anstutz* do not apply in this case.

Therefore, the creation by Daniel and Carol of the joint tenancy in the homestead converted the character of the $5000 gift from separate property to marital property and subjected the entire joint asset to division. Thus, the trial court erred when it excluded the $5000 from the marital estate. We reverse the trial court's property division determination and remand for a new property division which shall eliminate this exclusion.

## Proceeds of the Law Firm Buy-out

Next we consider whether the marital estate should have included payments due Daniel upon his withdrawal from his former law firm. Again, we are presented with a question of law to which we owe no deference to the trial court. *See First National Leasing Corp.,* 81 Wis. 2d at 208, 260 N.W.2d at 253.

For many years prior to the divorce, Daniel was a twenty percent shareholder in a law firm operating as a

service corporation. On March 30, 1983, Daniel sold his stock in the firm to become a sole practitioner. As part of the consideration for the sale of his interest, Daniel was to receive:

1. Twenty-four monthly payments representing his share of the fair market value of accounts receivable and fixed assets;

2. A discounted share of secured accounts receivable, and

3. Periodic payments representing contingent fee contracts in effect at the time of sale.

Carol argues that the trial court improperly classified these payments as income to consider in determining maintenance rather than as a marital asset subject to division. We agree.

Daniel and his fellow stockholders in the law firm agreed upon a method of purchasing stock owned by a stockholder who terminated his relationship with the firm. The stock buy-out agreement provided formulas, based on a stockholder's fractional ownership of the firm's stock, to determine the purchase price of the stock. Evidence submitted at trial indicated that Daniel's share of the fixed assets of the firm and the regular accounts receivable was valued at approximately $29,260 at the time he left the firm. Daniel was to receive this amount on an installment basis of $1,219.18 per month over a twenty-four month period beginning May 1, 1983. At the time of the divorce, several payments were still due. The value of the secured accounts receivable was established to be $10,167. At the time of trial, Daniel had received $1630, leaving $8537 to be paid.

In its findings of fact, the trial court listed only $8537, representing the secured accounts receivable, as an asset of the marital estate. In the initial property division, this asset was awarded to Daniel with the notation that "[t]hese funds are intended for and in fact are used

for living expenses until petitioner's new law practice is established." Daniel brought a post-judgment motion to omit the $8537 stock buy-out as an asset, relying on this notation. The trial court granted the motion.

Daniel argues that the holdings in both *Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W.2d 343 (Ct. App. 1981), and *Johnson v. Johnson,* 78 Wis. 2d 137, 254 N.W.2d 198 (1977), support his position that the payments he is to receive from his former law firm are future income and not marital property. We recognize that in some situations an interest in an asset which will yield future income should not be the subject of the property division but rather should be considered as income in awarding maintenance. *See Kronforst v. Kronforst,* 21 Wis. 2d 54, 63–64, 123 N.W.2d 528, 534 (1963). We also acknowledge that *Johnson* holds that it is not error to treat certain receivables as salary. *Johnson* at 143, 254 N.W.2d at 201. *Johnson* and *Holbrook,* however, both involved partners who had not severed themselves from their respective partnerships.

This case presents a situation different from one which involves the valuation of an interest in an ongoing partnership such as in *Johnson* and *Holbrook.* In the instant case, Daniel has completely severed himself from the service corporation and under the terms of the stock buy-out agreement has agreed upon a method for valuing his stockholder interest. As to the fixed assets, accounts receivable and secured accounts receivable, this case is no different than one where a readily ascertainable balance due on an installment obligation such as a promissory note or a land contract can be made.

In the instant case, Daniel's accounts were in existence at the time of the divorce and were capable of a ready value determination by reference to the stock buy-out agreement and other evidence. David Franklin, Daniel's certified public accountant and attorney, acknowledged that these accounts could legitimately be considered as

capital assets. Daniel himself treated them as such for tax purposes. We conclude that the fixed assets, accounts receivable and secured accounts receivable were improperly excluded from the marital estate.

As to the contingent fee receivables, we recognize that it was impossible to estabilsh a present value. The fact that an asset is impossible to value on the day of divorce, however, is not sufficient reason to ignore the asset when dividing the marital estate. *See Leighton v. Leighton*, 81 Wis. 2d 620, 634–35, 261 N.W.2d 457, 464 (1978). Rather, it is within the discretion of the trial court to determine the appropriate division. In the present case, one such method may be to divide the asset upon receipt of payment of the contingent fee receivables, pursuant to the third method suggested in *Bloomer v. Bloomer*, 84 Wis. 2d 124, 136, 267 N.W.2d 235, 241 (1978). *See also Holbrook* at 340–41, 309 N.W.2d at 350.

Since the amount which Daniel will realize relative to the contingent fee accounts receivable is unknown and not ascertainable, but yet remains an asset in existence at the time of divorce, it would appear that the only context in which these accounts can be addressed is within that of a property division.[2] For this reason, the third alternative under *Bloomer* appears to be the only practical approach. *Bloomer* at 136, 267 N.W.2d at 241.

The trial court erred in failing to include or consider as marital property all of the payments due Daniel from the sale of his interest in his former law practice. The trial court's ruling is reversed and remanded for a new property division to include as marital property the periodic payments due Daniel for the sale of his stockholder interest in his former law practice.

While maintenance and property division are separate awards, they are interdependent and cannot be made in a

---

[2] The trial court cannot make a maintenance award based upon an unknown income potential.

vacuum. *See Bahr v. Bahr,* 107 Wis. 2d 72, 78–79, 318 N.W.2d 391, 395–96 (1982). Therefore, the maintenance award is also remanded to determine the impact upon the maintenance award as the result of our property division holdings.

### Valuation of the Fixtures of Daniel's Present Law Office

The next issue concerns the valuation by the trial court of the new furniture and fixtures of Daniel's present law office. This court will not upset the trial court's valuation of marital assets unless the valuations are against the great weight and clear preponderance of the evidence. *Holbrook,* 103 Wis. 2d at 334, 309 N.W.2d at 347. In other words, the valuation must be clearly erroneous. *See* sec. 805.17(2), Stats.

In its findings of fact, the trial court valued the furniture and fixtures of Daniel's new law practice at $7000. At trial, Daniel indicated that he purchased a computer for the new law firm for somewhere between $7900 and "less than 7" thousand dollars. Earlier testimony by Daniel revealed that he spent an additional $2355 on other office equipment and furniture. At trial, both parties put a $2000 value on this additional office equipment and furniture. In a list of marital assets prepared before trial, the category of "office furniture" indicated a value of $2000. During trial, the trial court indicated that the value of the assets in this category should be increased to $9000, apparently in an effort to include the value of the computer. Daniel's attorney agreed. In its final findings of fact, the trial court increased the amount in this category from $2000 to $7000, rather than $9000. It appears, therefore, that the trial court

failed to include in its findings of fact any value for physical assets other than the computer.

While a valuation of the computer at $7000 is not clearly erroneous, the failure to give any value to the other physical assets of the new law practice is erroneous and is not *de minimis*. We therefore reverse the trial court's valuation and remand with instructions to include all assets in the valuation of the physical assets of the new law practice.

### Reduction of Marital Estate For Daniel's Expenses Incurred During the Pendency of the Action

■

The next issue concerns the trial court's reduction of the marital estate by $7000 for liabilities incurred by Daniel between the date of the commencement of the action and the date of trial. These liabilities represent Daniel's maintenance, insurance and living expenses and two adult children's college-related expenses.

Daniel cites no authority for the proposition that liabilities of this type should be deducted from the marital estate. These expenses did not represent joint marital debts.[3] They were incurred after Daniel filed the petition for divorce and all marital activities had ceased. These liabilities may well bear upon Daniel's ability to pay maintenance. *Besaw v. Besaw,* 89 Wis. 2d 509, 517, 279 N.W.2d 192, 195 (1979). They may also bear upon the property division. *Id.* They do not, however, permit a reduction of the marital estate.

As to the adult children's college expenses, the supreme court has held that there is no legal obligation to support a child beyond the age of eighteen years. *Miller v. Miller,*

---

[3] Daniel testified at trial that each party was to be responsible for his or her debts incurred after April 12, 1983, the date when the petition for divorce was filed.

67 Wis. 2d 435, 442, 447, 227 N.W.2d .626, 629–30, 632
(1975). Undertaking the support of his two adult chil-
dren was solely Daniel's decision. While commendable,
he had no legal obligation to do so. Such a liability is
not a joint marital debt and should not have been de-
ducted from the marital estate.

Temporary maintenance payments made during the
pendency of a divorce action are generally not considered
in making the final award. *Haugan v. Haugan,* 117 Wis.
2d 200, 219–20 n. 7, 343 N.W.2d 796, 806 (1984). *See
also Leighton,* 81 Wis. 2d at 632, 261 N.W.2d at 462. If
this holds true for court-ordered obligations, the same
rationale should obviously apply to payments gratui-
tously made for the benefit of adult children.

We therefore reverse this determination of the trial
court and remand with instructions to increase the mari-
tal estate by this amount.

### Valuation of the Limited Partnership Interests

The final issue concerns the refusal of the trial court
to place a present value on Daniel's interest in two real
estate limited partnerships. Rather, the trial court
awarded Carol an interest in the partnerships' future
distributions upon sale, without assigning a present value
to these assets. We affirm the trial court's method of
dividing these assets.

The Shorehaven partnership was organized as a lim-
ited partnership in 1972 for the purpose of acquiring an
apartment complex in Racine county. Daniel, one of four
limited partners, has a total interest of eleven and one-
half percent. The estimated fair market value of the real
estate as determined from the 1982 real estate tax bill
was $4,440,800.

The University Gardens limited partnership was or-
ganized in 1970. It owns an apartment complex in White-

water in Walworth county. Daniel has a ten percent limited partnership interest. The estimated fair market value of the real estate as determined for the 1982 real estate taxes was $3,277,048.

The trial court valued Daniel's interest in both of these limited partnerships at zero or "presently nominal" and explained that:

It is hardly possible to establish a market value. There is no market; the terms of University Gardens certificate bar substitution of interest without consent of all partners. Shorehaven certificate bars substitution without consent of the general partner. Both partnerships are at the crossover point. Any liquidation distribution will be based principally on the sales price of the real estate, *a figure presently unascertainable.* Because the Court intends to divide these interests on a percentile basis, there is no need to indulge a metaphysical effort to fix present dollar market values. Furthermore, if the liquidation distribution proves less than the capital gain and ordinary income tax sequaelae, a net tax liability will result. [Emphasis added.]

The trial court provided for a fifty-fifty distribution of "any net after-tax distributions, either at or prior to liquidation." This method of property division is similar to the third alternative discussed in *Bloomer,* 84 Wis. 2d at 136, 267 N.W.2d at 241, where the property involved was pension benefits.

This court will not upset the trial court's valuations of assets unless they are against the great weight and clear preponderance of the evidence. *Holbrook,* 103 Wis. 2d at 334, 309 N.W.2d at 347. Stated otherwise, the valuation, which is a finding of fact, must be clearly erroneous. Sec. 805.17 (2), Stats.

We conclude that the trial court's finding that it was presently impossible to determine a present value is not clearly erroneous. At trial, both parties presented expert testimony as to the valuation of Daniel's interests in the limited partnerships. David Franklin, a certified public

accountant and attorney, testified that it was both impractical and impossible to presently value Daniel's limited partnership interests. Due to such difficulties, Franklin valued Daniel's interest at zero because any attempt to place a value on the partnerships would be "pure conjecture." Carol's expert, Roy Theuerkauf, on the other hand, testified that valuation could properly be determined by applying Daniel's percentage interest in the partnership to the real estate tax bills' recital of estimated fair market value less certain deductions.[4]

Section 805.17(2), Stats., provides that upon review of findings of fact where trial is to the court, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Here, the trial court's determination that it was not possible to presently value Daniel's limited partnership interests represents an assessment of the credibility of competing witnesses. Such a finding is not clearly erroneous.

The method of property division is within the discretion of the trial court. *Holbrook* at 339, 309 N.W.2d at 349. The exercise of discretion requires a reasoning process dependent upon the facts in the record and a conclusion based upon the proper legal standard. *Id.* at 340, 309 N.W.2d at 349.

In *Holbrook,* the court indicated that the future division method should be used only where the evidence shows that present value determinations are too speculative or where there are not enough assets to equitably require that benefits due in the future be split presently. *Id.* at 340–41, 309 N.W.2d at 350. Certain credible evidence relied upon by the trial court indicated that a determination of the present value of the partnerships was unacceptably speculative. As a result, the trial court

---

[4] These included mortgage fees, organizational fees, prepaid mortgage interest and expenses, all of which were referred to by Mr. Theuerkauf as "intangibles."

chose to provide for a fifty-fifty division in the net after-tax distributions either at or prior to liquidation of the real estate partnerships.

Given the trial court's explanation that the present value of the partnerships was unascertainable at the time of divorce, we find no abuse of discretion in the trial court's choice to provide for future division. Therefore, the trial court's method of dividing Daniel's real estate limited partnerships is affirmed.

In conclusion, we reverse the judgment of the trial court and remand for a new property division with directions to:

(1) include as marital property subject to division the $5000 gift from Daniel's parents which was used to purchase the Weisses' homestead;

(2) include as marital property subject to division the value of payments receivable at the time of divorce and thereafter from the sale of Daniel's interest in his former law firm;

(3) include as marital property subject to division *all* of the assets of Daniel's new law practice;

(4) increase the marital estate by $7000 representing the amount of the liabilities incurred by Daniel between the commencement of this action and the date of divorce, for his own and the adult children's expenses, and

(5) determine the impact of the new property division upon the maintenance award.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.