# IN RE the MARRIAGE OF: Kathleen A. ZIRNGIBL, Petitioner-Respondent,

v.

# Joseph E. ZIRNGIBL, Respondent-Appellant.

## Court of Appeals

*No. 91-0224. Submitted on briefs August 27, 1991.—Decided October 16, 1991.*

(Also reported in 477 N.W.2d 637.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael S. Heffernan* of *Stolper, Koritzinsky, Brewster & Neider, S.C.,* Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Joseph C. Kucirek* of *Kucirek Law Offices,* Wausau.

Before Cane, P.J., Myse and Fine, JJ.

MYSE, J. Joseph Zirngibl appeals a judgment of divorce. He argues that the trial court abused its discretion when it (1) awarded his former wife, Kathleen, $16,167 gifted property; (2) awarded Kathleen limited maintenance; (3) refused to order a psychological evaluation of Kathleen; and (4) reached an unfair result on the issues of custody, maintenance, property division and attorney fees to punish Joseph for proceeding pro se. We reject his challenges and affirm the judgment.

Joseph and Kathleen were married in 1975 and had two children at the time of their divorce, ages seven and fourteen. During their marriage, both obtained degrees from the University of Wisconsin-Eau Claire. Joseph's degree was in secondary education, with a political science and chemistry major. Kathleen graduated in special and elementary education. Joseph obtained another degree in elementary education in May 1990.

At the time of the divorce, Joseph was employed by the New Auburn School District receiving a gross monthly salary of $1,841. Kathleen never sought employment as a teacher, but at the time of divorce was earning $615 per month as a teacher's aide. Kathleen testified that she did not believe she was suited for teaching and was attending night classes to become a medical technician.

Both parties sought custody of the minor children. Kathleen and the two children were interviewed by the Taylor County Human Services Department. The Eau Claire Clinic study included Joseph, and the parties' youngest son, as well as Joseph's girlfriend and her two children. It also included psychological testing of Joseph, apparently standard procedure in Eau Claire. The Taylor County report contained no psychological testing.

Joseph objected to both reports, asserting that the reports were unbalanced because there was no psychological evaluation of Kathleen. Before trial, Joseph sought an order requiring Kathleen's psychological evaluation; the motion was denied.

The trial court awarded Kathleen sole legal custody of both children. The court concluded that the custody issues were a smoke screen; that Joseph used this claim only to harass and intimidate Kathleen. As a result, it ordered Joseph to pay $2,500 of Kathleen's attorney fees. The trial court set child support at $460 per month,

representing 25% of Joseph's income. The court found that Joseph had a significantly higher earning capacity than Kathleen, and awarded her maintenance for three and one-half years.

The trial court also awarded $16,167 in gifted property to Kathleen. Kathleen's parents had given her this money before the marriage. Kathleen testified that she deposited the money in a joint account to use as a down payment on their home. Kathleen believed the home had been titled jointly. However, she learned for the first time at trial that Joseph had the home titled in his name alone. The trial court concluded that the $16,167 was to be awarded to Kathleen and that the transmutation analysis did not apply. The balance of the property was equally divided.

The issues concerning property division and maintenance rest largely within trial court discretion. *Haack v. Haack,* 149 Wis. 2d 243, 247, 440 N.W.2d 794, 796 (Ct. App. 1989). In reviewing discretionary decisions, the appellate court does not substitute its judgment for that of the trial court, but rather reviews the record to determine whether the trial court abused its discretion. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). To be sustained, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied on are considered together for the purpose of achieving a reasoned and reasonable determination. *Id.*

## GIFTED PROPERTY

Joseph argues that the $16,167 Kathleen received before the marriage as a gift from her parents lost its status as separate property when it was deposited into a

joint bank account and used to purchase the home. He asserts that it was an abuse of discretion not to include this sum in the marital estate to be divided equally. We disagree.

Property received as a gift or inheritance is generally considered the separate property of the person receiving it and is not subject to division upon divorce. Section 767.255, Stats. However, a change in the title from sole to joint ownership affects the character of the property. *Weiss v. Weiss,* 122 Wis. 2d 688, 692, 365 N.W.2d 608, 611 (Ct. App. 1985). "[A] spouse may by agreement, either express or implied, or by gift, transmute an item of separate property into marital property." *Id.* at 693, 365 N.W.2d at 611 (citation omitted). The merger of separate, exempt personal property with other funds used to purchase real estate in joint tenancy creates a rebuttable presumption of donative intent. *Trattles v. Trattles,* 126 Wis. 2d 219, 224, 376 N.W.2d 379, 382 (Ct. App. 1985). However, if the property retains its separate character and identity, it retains its status as nonmarital property exempt from division. *Id.* at 225, 376 N.W.2d at 382–83; *see also Plachta v. Plachta,* 118 Wis. 2d 329, 334, 348 N.W.2d 193, 195–96 (Ct. App. 1984).

There is no dispute that the $16,167 was gifted property, that it went into a jointly titled bank account and that it was used to purchase the parties' residence. The dispute centers on the issue of donative intent. We conclude that the record supports the trial court's implicit determination that Kathleen rebutted the presumption of donative intent.[1]

---

[1]Although the trial court did not make a specific factual finding as to Kathleen's intent, we may assume this finding based

Wisconsin has long recognized the distinction between absolute and conditional gifts. *Brown v. Thomas,* 127 Wis. 2d 318, 326, 379 N.W.2d 868, 872 (Ct. App. 1985). A gift may be conditioned upon some act by the donee, and, if the condition is not fulfilled, the donor may recover the gift. *Id.* at 327, 379 N.W.2d at 872. Here, the condition was unfulfilled. Kathleen deposited the funds in a joint account for the purpose of buying jointly titled real estate. Thus, the condition attached to the gift was that it be used to purchase jointly-owned real estate. However, this condition was never met because Joseph, unknown to Kathleen, titled the realty in his own name.

Joseph argues that the real estate was jointly titled, and, even if it was not, it does not matter because he did not claim sole ownership of it at the time of the divorce. There is no credible evidence in the record that the realty was jointly titled. Although Kathleen originally testified it was, her testimony was based upon a misconception that was later clarified after a title check. Thus, the trial court's finding to this effect is not clearly erroneous. Section 805.17(2), Stats. Further, Joseph cannot alter Kathleen's intent at the time of making the deposit by positions he later takes at trial. We reject Joseph's contention that the record title to the real estate is irrelevant information.

We understand Joseph's argument that he could not legally defeat Kathleen's marital interest in the homestead by titling the realty in his name alone. However, it

upon the trial court's decision that the property retained its status as separate property. *See Englewood Community Apts. Ltd. v. Grant & Co.,* 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716, 719 n.3 (Ct. App. 1984).

is this argument, not the evidence, that is irrelevant. The record is clear that at the time of making the transfer of the funds into the joint account Kathleen intended the realty to be titled jointly. Accordingly, there is no showing that her intent was to protect her interest by operation of law.

Because the condition was unmet, the gift was never completed, and the separate character of the funds was retained. Thus, the trial court correctly concluded that the transmutation analysis does not apply.[2]

## MAINTENANCE

Next, Joseph argues that the trial court abused its discretion by awarding maintenance. He argues that its decision ignores the award to Kathleen of $16,167 in separate funds and is based upon an erroneous determination of her earning capacity. Joseph recognizes that a dependent spouse is not required to use property division for support. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 34, 406 N.W.2d 736, 740 (1987). However, he argues that

---

[2]We further note that the record demonstrates that the trial court sought to compensate Kathleen for her extra contributions to the value of the residence through the use of her separate property. Even if the CDs had lost their separate identity and character and were transmuted into marital property, the trial court's decision is supported by the application of sec. 767.255(2) and (3), Stats. This section permits the trial court to achieve an unequal division of marital property based on the parties' respective contributions, the property brought to the marriage, as well as other factors. Because it is undisputed that Kathleen's contribution included $16,167 separate property, the trial court was entitled to take this into consideration in fashioning a fair and equitable division.

this rule does not apply when the dependent spouse has valuable separate property. Under the circumstances of this case, his argument is unpersuasive. Kathleen's separate property is in the form of equity in the family home. To require her to liquidate it would frustrate the objectives of sec. 767.255(7), Stats., which is to consider the desirability of awarding the family home to the primary caretaker of the children. We conclude that the award of equity in the home did not disqualify Kathleen from the award of maintenance.

Joseph also contends that Kathleen's earning capacity should not have been based on her actual earnings, but rather on her earning potential as an elementary teacher. We disagree. Kathleen's potential earning capacity is not an appropriate basis in view of her testimony that she does not plan on teaching, but instead is receiving further training as a medical technician. The trial court explained:

> [E]ven though Kathy does have a degree, she testified that she does not feel that she is suited to teaching . . .. [T]he Court is satisfied that the law allows and requires a Court to allow a person to seek an appropriate job and profession consistent with their ambitions. The Court is well aware of the strain of teaching. The Court is well aware that not everybody who . . . has a teaching degree is suited to teaching.

The court observed that Joseph did not use his first degree and that Kathleen maintained a home, took care of the children and helped earn the family's income while Joseph went back to college to obtain a second degree.

Joseph takes issue with the court's statement that the law "requires" a court to allow a person to seek employment consistent with their ambitions. Joseph

concedes that the law allows some leeway in terms of choosing a career, but does not permit underemployment to avoid the obligation of self-support. Joseph relies on *In re R.L.M.,* 143 Wis. 2d 849, 422 N.W.2d 890 (Ct. App. 1988), and *Fowler v. Fowler,* 158 Wis. 2d 508, 521–22, 463 N.W.2d 370, 375 (Ct. App. 1990).

Here, Kathleen has not refused to accept gainful employment. Although she has chosen to make a career change, the trial court found this choice to be reasonable under the facts and circumstances of this case. We conclude that the trial court reasonably exercised its discretion. This case is not like *R.L.M.,* where the supporting parent chose college and not gainful employment. Nor does *Fowler* require a different result. In *Fowler,* the wife elected to teach rather than practice law, and her income dropped from $47,112 to $26,958. The court found that the wife did not contribute to the husband's education. *Id.* at 525, 463 N.W.2d at 376. This court concluded that her voluntary reduction in income did not form a basis for a maintenance award. However, in affirming the trial court's denial of maintenance, we stated: "We do not hold that the recipient spouse automatically disqualifies himself or herself from an award of maintenance if he or she makes a career choice which results in reduced income." *Id.* at 552, 463 N.W.2d at 375. Rather, that choice is a significant factor that a court may consider. *Id.* Here, the record shows that the trial court considered this factor and had a reasonable basis for a limited maintenance award.

## PSYCHOLOGICAL EVALUATION

Next, we consider Joseph's claim that the trial court abused its discretion by failing to order a psychological

140

evaluation of Kathleen. The record reveals that the court did not order an evaluation of either party. Rather, the Eau Claire Clinic evaluated Joseph as part of its home study. The Taylor County Human Services Department did not include a psychological evaluation as part of its study.[3] Joseph requested one of Kathleen for comparison purposes. Kathleen objected, citing difficulties taking off from work.

The trial court asked the guardian ad litem for his opinion. The guardian ad litem responded that he already discussed the issue with the Taylor County Human Services personnel, who did not indicate that a psychological evaluation was necessary for Kathleen. However, one for the parties' oldest son was indicated. The trial court denied Joseph's request for a court-ordered psychological evaluation of Kathleen. It stated that there had been no showing that one was needed, and "apparently the issue is the relationship between the child and the father, not the child and the mother." Joseph does not deny the concerns he had regarding his relationship with his oldest son.

The trial court's decision reflected an appropriate exercise of discretion. There was no showing of need for Kathleen's evaluation. The record before the court demonstrated that Joseph's relationship with his oldest son was a cause of concern. Under these circumstances, the trial court was not required to enter an order requiring Kathleen's evaluation.

---

[3]At the time of the divorce, Joseph was living in Eau Claire County and Kathleen was living in Taylor County; hence, the two different agencies performing the home studies.

Finally, Joseph argues that the effect of the proceedings was to punish Joseph for proceeding pro se. The record does not support this allegation. The trial court extended deference and courtesy to Joseph. For example, with respect to a motion to hold him in contempt for failing to properly file financial data, the trial court stated:

> The Court is satisfied that perhaps Mr. Zirngibl was working on a pro se basis, did file it with the family court commissioner as had been ordered but did not realize he had to file it with the attorney. That was brought to his attention later and I am satisfied that that's been resolved.

The record also shows that the trial court would sustain Joseph's valid objections to certain evidence. However, as the trial court also stated, acting as one's own lawyer did not excuse Joseph from acting in a reasonable and responsible manner.

Joseph contends that much evidence of misconduct would have been excluded had Joseph been represented by counsel. That is questionable in light of the numerous cross-motions for contempt of court filed by each party. Also, the record demonstrates that the trial court relied on proper factors in reaching its determinations. The result reached by the court was based not upon Joseph's pro se status, but rather upon factors properly considered by the court.

*By the Court.*—Judgment affirmed.