IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 24, 2007 Session

**DARRYL J. ROBERTS v. THE BAYLOR SCHOOL**

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 05-1065     Hon. W. Frank Brown, III., Chancellor**

**No. E2007-00266-COA-R3-CV  - FILED JANUARY 25, 2008**

Plaintiff sued recipient of an *inter vivos* gift to recover the gift on the grounds defendant violated a fiduciary duty owed to plaintiff, and the failure of defendant to comply with conditions of the gift. The Trial Court ruled in favor of defendant.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and Sharon G. Lee, J., joined.

John T. Rice, Chattanooga, Tennessee, for appellant.

K. Stephen Powers, Chattanooga, Tennessee, for appellee.

**OPINION**

Plaintiff made an *inter vivos* gift to defendant, and in this action sought to recover the donation, first, on the grounds that defendant had breached its fiduciary duty to plaintiff, and then raised an issue that defendant had failed to comply with the conditions upon which the gift was made.  The Trial Court, in summary judgments, ruled in favor of defendant and plaintiff has appealed.

## Background

Plaintiff's action was filed on October 25, 2005, seeking revocation and return of the *inter vivos* gift. In 1998, plaintiff, a former student of Baylor School and graduate of the class of 1962, gave real property to Baylor to endow a scholarship, known as the "Roberts Family Endowed Scholarship." The Complaint avers that the property was sold for approximately $170,000.00 and the proceeds were used to fund the scholarship. The Complaint charges that the gift was made contingent on defendant's exercising its "fiduciary obligations of the Baylor School as a non-profit corporation and the proper investment of the funds to produce money for scholarships consistent with the guidelines established by 'Roberts Family Endowed Scholarship Fund.'" The Complaint charges this contingency was either expressed or implied. Roberts was made a member of the Baylor Board of Trustees in 2004, and learned that a substantial part of Baylor's endowment was invested in certain "high risk hedge funds", and that a member of the Endowment Committee had a conflict of interest. According to the Complaint, Roberts was asked to resign from the Board when he brought these issues to the Board's attention. He resigned and this action ensued.

A document entitled "Roberts Family Endowed Scholarship Fund - Administrative Criteria" was attached to the Complaint.

Defendant moved to Dismiss and for Summary Judgment, on the grounds that plaintiff lacked standing to obtain the return of the money he donated, and defendant was not required by law to return the gift because there was no express or implied conditions connected with the gift that it had to be returned if certain conditions were not met. The Motion was accompanied by several affidavits from Baylor officials.

Plaintiff, in his response to defendant's Statement of Undisputed Facts referred to the deposition testimony of Franklin Daniels and Dallas Joseph. These depositions are not a part of the appellate record, but his Statement of Undisputed Facts relies heavily on these depositions and his own affidavit.[1] Roberts' affidavit focuses on facts regarding the investment of part of the Baylor's endowment fund in hedge funds and his belief that some of his gift had been put toward the school's operating expenses. Later, plaintiff filed an "Amended Response to Baylor School's Motion for Summary Judgment in which he incorporates by reference his brief. The Amended Response makes two points. One, that Baylor had failed to meet one of the conditions of his gift to Baylor by not notifying him of the identity of the Robert's Scholarship recipient or allowing him input in the selection process. The second point was that Baylor had not responded to plaintiff's Statement of Undisputed Facts. He also filed his Amended Affidavit which states that the documents regarding the Roberts Scholarship contained a provision that Roberts or his family were to have input as to who would received the scholarship and that Baylor had not satisfied this criteria for the past three years.

---

[1]The first 14 paragraphs of Roberts' 24 paragraph Statement of Undisputed Facts are not supported by the record.

On August 31, 2006, the Chancellor filed a Memorandum Opinion and Order granting defendant's Motion and dismissing the original claims which were specifically alleged in the Complaint. The Court found in its Memorandum that plaintiff's gift was a charitable gift subject to the Tennessee Charitable Beneficiaries Act of 1997, Tenn. Code Ann. § 35-13-101 *et seq,* and the disposition and administration of a charitable gift is subject to the Act. Also, conditions on charitable gifts that result in the return of the gift must be expressed or clearly impliedly in the gift instrument that governs the gift, which plaintiff did not expressly or impliedly reserve the right to recover the gift. The Chancellor also ruled that the claim that defendant had used part of the Scholarship fund for operating costs in violation of the gift instrument was not supported by the testimony of Dallas Joseph, which plaintiff relied upon.

The Court then acknowledged that during oral argument, plaintiff had raised a new issue that had not been adequately briefed, i.e., that Baylor violated one of the conditions of the Selection Process by not notifying Roberts of the identity of the scholarship recipient or allowing Roberts the opportunity to participate in the recipient election process. The Court stated that it would treat plaintiff's "broad and general allegations in his Complaint as encompassing this issue" and directed Baylor to file an answer to this issue or other appropriate pleadings.

Then, on September 12, 2006, plaintiff filed a "Motion for Relief From Order Rule 60 T.R.C.P." Baylor responded to the Motion and pointed out that no final judgment had been entered and that Rule 60 was not a proper vehicle for relief. Baylor also responded and denied that it "has breached the conditions of the Selection Process" in the administration of the Roberts family scholarship fund, and attached the gift instrument entitled "Roberts Family Endowed Scholarship Fund Selection Process." Baylor then filed a second Motion for Summary Judgment, and in support cited the Trial Court's finding in its Memorandum Opinion and Order for summary judgment that pursuant to Tenn. Code Ann. § 35-13-103[2] the gift instruments at issue were the Administration Criteria and the Selection Process. Baylor asserted that neither document expressly or impliedly reserved to Roberts the right to recover his gift if Baylor had not complied with the Selection Process, and it argued that Roberts had no standing to bring the action.

Roberts then moved to amend his Complaint, which the Trial Court granted. Roberts' Amended Complaint alleged that Baylor had a fiduciary duty to Roberts which was breached by Baylor's failure to disclose how the gift funds would be invested or what the "prevailing spending policies" of the endowment committee were and failure to adhere to the Selection Process. Further, that the Roberts Family Endowment Scholarship Fund was to be used solely for scholarship, and the use of the fund for fees, expenses or commissions by Baylor contradicted the stated purpose of the gift. In Baylor's response, it asserted that it was an undisputed fact, supported by the second affidavit of Dallas Joseph, that no part of the Roberts' scholarship fund had been used for the school's general operating expenses, and that all income from the fund had been used to award scholarships to students, except as otherwise provided in the gift instrument for monies spent in

---

[2] A gift instrument that specifies the charitable beneficiaries, objects, purposes or subjects of the charitable gift controls the disposition or administration of the charitable gift.

accordance with the Board of Trustees' spending policy. Baylor further asserted that the undisputed material facts show that Baylor did not breach any duty owed to Roberts to inform him that costs, fees and expenses would be incurred in the investment and management of the gift he made to Baylor and that such fees and costs would be paid out of the income produced by the gift.

Then plaintiff filed a second Motion for Summary Judgment on November 7, 2006. The plaintiff's Motion for Summary Judgment on November 7 was placed under seal by the Trial Court and is not part of the record on appeal. [3] The Trial Court, in yet another Memorandum Opinion and Order, granting Baylor's second motion for summary judgment and dismissed the Complaint. The Trial Court ordered Baylor School to "follow all parts of the Selection Process" and to "submit future, proposed scholarship recipients to Darryl J. Roberts for his approval or rejection". The Trial Court, in its memorandum, rejected the plaintiff's Motion for Rule 60 relief, and further held that the Administrative Criteria and the Selection Process are the only documents that comprise a gift instrument for the Roberts Family Scholarship Fund, and the gift instruments do not contain a reservation of the right to recover the gift upon the occurrence of a future event.

The gift instruments place no restrictions on the way Baylor invests its gift monies, and the Administrative Criteria clearly allows Baylor to "spend a portion of the income" from the fund " as per the prevailing spending policy of Baylor's Board of Trustees," thus Roberts cannot recover the gift based on Baylor's use of part of the income generated by the gift to pay a pro-rata portion of certain fees, commissions and expenses incurred by the endowment fund. The Court continued that because the term "prevailing spending policy" is set forth clearly in the Administrative Criteria, and that Roberts could have asked Baylor what the policy was before agreeing to the Administrative Criteria, Roberts cannot recover his gift on the basis that Baylor did not define the term. Moreover, the Chancellor continued that Roberts' claim that there is a fiduciary relationship between himself and Baylor and that Baylor breached its fiduciary duty was not born out by any facts or by any legal authority. The Court concluded that Baylor did fail to fulfill the obligation under the Selection Process for three years, but Roberts is not entitled to the return of his gift based on the non-fulfilment of this condition. He observed that the essential purpose of the gift, to provide scholarships, was fulfilled, and that Roberts had made a supplemental donation to the scholarship fund after Baylor's failure to comply with the approval condition occurred and that this action could be construed as a waiver of the rejection option or a ratification of the selection procedure as carried out by Baylor. Further, that the gift instrument did not provide for a return of the gift if Baylor did not follow the selection process as described in the instrument.

Following this ruling, this appeal ensued. The issues raised by plaintiff on appeal are summarized as follows:

A.      Did the Court of Appeals err in denying plaintiff/appellant's Motion for an Extension of Time and to Supplement the Record?

---

[3] Plaintiff attached his motion for summary judgment to his appellant brief as addendum 2.

B.	Did the Trial Court err in granting Baylor School's Motion to Dismiss and for Summary Judgment dismissing plaintiff's original Complaint, which sought to revoke his gift to Baylor School?

C.	Did the Trial Court err in granting Baylor School's Second and Supplemental Second Motion for Summary Judgment and in Denying Plaintiff's Motion for Summary Judgment?

Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P.56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). This Court reviews a summary judgment motion *de novo* as a question of law without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.*, 970 S.W. 2d 435, 437 (Tenn. 1998). The evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party. *Byrd*, at 210-211.

In *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004), the Tennessee Supreme Court reiterated the standards applicable when the appellate court reviews a motion for summary judgment:

> Our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51; *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples,* 15 S.W.3d at 88.
>
> When the party seeking summary judgment makes a properly supported motion, the
>
> burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.
>
> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair*, 139 S.W.3d at 763-64.

Plaintiff's first issue raises whether the Court of Appeals erred in denying his Motion for an Extension of Time and to Supplement the Record. The Trial Court had placed Roberts' Motion for Summary Judgment under seal, and the Trial Court clerk did not include the sealed motion for summary judgment in the record it forwarded to the appellate court. This Court denied the Motion and Roberts appeals the Court's order in effect to itself, but cites no authority in support of his appeal to the Court of Appeals of a ruling of the Court of Appeals. Rule 11 of the Rules of Appellate Procedure provides the procedure for appealing a decision of the Court of Appeals, and this Court's denial of plaintiff's motion is not a final decision of this Court, and is thus not appealable and, even if it were final, plaintiff's appeal of this issue would be to the Supreme Court.

The next issue raised by the plaintiff is whether the Trial Court erred in granting Baylor's Motion for Summary Judgment to the original Complaint which sought to revoke his gift?

The fact that Roberts' gift to Baylor was an *inter vivos* charitable gift is not in dispute. Charitable gifts are governed by the Tennessee Charitable Beneficiaries Act of 1997, Tenn. Code Ann. § 35-13-101 *et seq*. The Act provides in section 103 that gift instrument controls the management and disposition of a charitable gift. "A gift instrument that specifies the charitable beneficiaries, objects, purposes or subjects of the charitable gift controls the disposition or administration of the charitable gift, except as provided in §§ 35-13-106 and 35-13-107." Tenn Code. Ann. § 35-13-103.[4] The gift instruments that control the administration and disposition of the Roberts Family Endowed Scholarship Fund are the Administration Criteria and the Selection Process.

Baylor took the position in its first motion for summary judgment that Roberts lacked standing to bring this suit because the gift instruments did not reserve for the donor a right of revocation or right of reverter if certain conditions of the gift were not carried out. The Trial Court correctly held that Roberts did not reserve the right to recover his gift if certain conditions in the gift instrument were not carried out.

It is well-established that an *inter vivos* gift is established by delivery with an intention to give. *Union Planters Bank, N.A. v. Shepard*, No. W2002-0118-COA-R3-CV, 2003 WL 21729443, *4 (Tenn. Ct. App. July 14, 2003) (citing *Atchley v. Rimmer*, 255 S.W. 366, 369 (Tenn.1923). An *inter vivos* gift becomes irrevocable upon delivery. *Weston v. Community Baptist Church of Wilson County*, No. M2004-02688-COA-R3-CV, 2007 WL 394644, at * 7 (Tenn. Ct. App. February 5, 2007). However, if a gift is subject to a condition subsequent, the gift is subject

---

[4] Sections 106 and 107 of the Act are not applicable to this case.

to forfeiture if the condition is not complied with. *Weston*, at * 7.

Roberts essentially makes two arguments as to why his gift should be returned to him. First, that Baylor breached its fiduciary duty to him in the way and manner it invested the funds, and the other ground advanced that Baylor, by not complying with the conditions of allowing him to pass on the recipient of the scholarship as the condition of the gift, had forfeited its right to keep the gift. We will address these arguments in that order.

In this case, the Trial Court examined one of the gift instruments at issue, the Administration Criteria, and found that the instrument did not expressly or impliedly set forth any conditions regarding the investment strategy Baylor must employ when managing the gift or that "if the Scholarship Fund was invested in hedge funds, Roberts would seek return of his charitable gift". The Trial Court reasoned as follows:

> If Roberts had wanted to retain the ability to recover his gift in the event of Baylor's alleged irresponsible investment of the gift, Roberts needed to expressly or impliedly reserve that right in the gift instrument. However, Roberts has not done so, and the court is obligated to follow the statutory dictate that the gift instrument controls the disposition and/or administration of the charitable gift. Accordingly, Roberts has no right to seek the return of his charitable gift on the basis that Baylor has invested in high risk hedge funds.

Neither gift instrument at issue, the Administration Criteria or the Selection Process, contains any language, express or implied, regarding how the Scholarship Fund should be invested. Thus the Trial Court's holding that Roberts did not have a right to revoke the gift based on Baylor's investment of part of its endowment in hedge funds was correct.

The Trial Court considered the allegations in plaintiff's Amended Complaint that Baylor breached a fiduciary duty it owed to Roberts by not advising Roberts of its investment strategy or explaining the "prevailing spending policy" of Baylor's Board of Trustees. The Trial Court looked at the gift instruments and found there was nothing in the Administration Criteria concerning restrictions or limitations on Baylor's investment of the Fund, and noted the document does provide that a portion of the income from the Fund will be spent per the prevailing spending policies of the Baylor Board. The Trial Court reasoned that if Roberts had intended to place investment restrictions on his gift he could have done so but he did not. The Trial Court found that there was no fiduciary relationship between Baylor and Roberts, and that Roberts pled no facts which could be construed to establish such a relationship and he had not provided any legal authority to support the allegation that Baylor owed a fiduciary duty to him to provide him with the information.

Roberts claims that the fiduciary duty Baylor owed him arises out of an agency

relationship with Roberts in the place of principal and Baylor as agent.   Roberts offered no facts to support this allegation and the cases he cited provide no authority for this contention.[5] The undisputed evidence  establishes that the relationship between Roberts and Baylor is that of donor and donee of a completed *inter vivos* gift.  This relationship cannot be interpreted as that of principal and agent.  Tennessee courts have adopted the definition of agency set out in § 1 of the Restatement (Second) of Agency (1958): "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Haskins v. Yates*, No. 88-99-II, 1988 WL 80967, *3 (Tenn. Ct. App. Aug. 5, 1988)(citing Investors *Syndicate of America v. Allen*, 198 Tenn. 288, 296, 279 S.W.2d 497, 500 (1955)). Agency, in its broadest sense, includes every relationship in which one person acts for or represents another. *Haskins* at 3.  There is nothing in the gift instruments that demonstrates that Roberts expected Baylor to act on his behalf in administering the Scholarship Fund nor is there any evidence that Baylor was under the control of Roberts regarding the administration of the Fund. We affirm the Trial Court's ruling that there was no agency relationship between Roberts and Baylor.

Next, Roberts argues that he was entitled to revocation of the gift because Baylor breached the condition that Roberts was to have the right of final approval of the scholarship recipient.

Roberts admits that there is no express condition in the gift instruments that provides that he could seek revocation of the gift for any reason.  It is also not contested that Baylor failed to abide by the terms of the Selection Process when it did not allow Roberts to have input in the selection of the recipient for three years. *Tennessee U.D.C. v. Vanderbilt University*, 174 S.W.3d 98 (Tenn. Ct. App. 2005), authored by Judge Koch (now Justice Koch) is instructive on the issue before us.  In that case, the United Daughters of the Confederacy ("Daughters") made a gift of funds dedicated to the building of a dormitory for female students at defendant Vanderbilt's predecessor school, Peabody College.  The gift was governed by three agreements or gift instruments.  The agreements contained three conditions: (1) Peabody College was required to use the gift to construct a dormitory on its campus conforming to plans approved by the Daughters; (2) the College was

---

[5] Roberts cited *Theis v. duPont*, 212 Kan. 301, 510 P. 2d 1212 (1973) and *Weaver v. McCarter,* No. W2004-02803-COA-R3-CV, 2006 WL 1529506(Tenn. Ct. App. June 6, 2006), *aff.* in part, *rev'd* in part *Weaver v, McCarter*, No. W2006-02058-COA-R3-CV, 2007 WL 2914891, (Tenn. Ct. App. Oct. 8, 2007) in both his response to Baylor's motion for summary judgment and in his brief.  Neither case provides authority for plaintiff's theory that a completed *inter vivos* gift creates an agency relationship. *Theis* involved an investor/customer and a brokerage firm that made an unauthorized transaction with the customers's funds. *Weaver* concerns the relationship between a homeowner and his real estate agent/broker.  Thus, this Court could consider that plaintiff waived this issue on appeal.  "Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed waived and will not be considered on appeal." *Branum v. Akins,* 978 S.W.2d 554, 558 (Tenn.Ct. App.1998); *see also* Tenn. R. App. P. 27(a)(7).

required to allow female students who were descendants of Confederate soldiers and nominated by the Daughters to live in the dormitory rent free; and (3) the College was required to place on the building an inscription naming it "Confederate Memorial Hall". *Id.* at 116. One of the agreements expressly reserved to the Daughters the right to revoke the gift if the College failed or ceased to comply with the three conditions. Peabody College did comply with the conditions for many years. However, in 1979 Peabody College merged with Vanderbilt University and the arrangement for descendants of Confederate soldiers who were nominated by the Daughters ceased. *Id.* at 106. The name of the building, Confederate Memorial Hall, became a controversial issue on the Vanderbilt campus and the name was changed to Memorial Hall. The Daughters filed suit against Vanderbilt for breach of contract, based upon the violation of the conditions of the gift. The Court examined the conditions provided in the gift agreements and Tennessee law regarding conditional gifts, as well as the law in other jurisdictions, as follows:

> Donors often seek to impose conditions on gifts to charitable organizations. Richard L. Fox, *Planning for Donor Control and Other Strings Attached to Charitable Contributions,* 30 Est. Plan. 441, 441 (2003) [hereinafter Fox]. In the case of *inter vivos* transfers, the conditions are generally embodied in a gift agreement or a deed of conveyance. Tennessee Charitable Beneficiaries Act of 1997, Tenn. Code Ann. § 35-13-102(b)(8) (2001); Fox, 30 Est. Plan. at 441; *see, e.g., Walker v. Shelby County Sch. Bd.,* 150 Tenn. 202, 203, 263 S.W. 792, 792 (1924); *Ledgerwood v. Gault,* 70 Tenn. 643, 645, 1879 WL 3767, at *2 (1879); *Carmody v. Trs. of Presbyterian Church,* 29 Tenn. App. 275, 276-79, 203 S.W.2d 176, 176-77 (1947).

> A conditional gift is enforceable according to the terms of the document or documents that created the gift. Tenn. Code Ann. § 35-13-103 (2001); 38 Am. Jur.2d *Gifts* § 72, at 767-69; 14 C. J. S. *Charities* § 30, at 199-200 (1991). If the recipient fails or ceases to comply with the conditions, the donor's remedy is limited to recovery of the gift. *Southwestern Presbyterian Univ. v. City of Clarksville,* 149 Tenn. at 269, 259 S.W. at 554 ("One may attach such conditions to his contributions as to support his right to withdrawal thereof, upon a violation of such conditions, but his rights, or those of a group so situated, must be so limited."); Eason, 38 U.C. Davis L. Rev. at 406-07 & nn. 115 & 118, 421; *see also Ver Brycke v. Ver Brycke,* 379 Md. 669, 843 A.2d 758, 771 (2004) (collecting cases); *Stock v. Augsburg Coll.,* No. C1-01-1673, 2002 WL 555944, at *5 (Minn. Ct. App. Apr. 16, 2002); *Zirngibl v. Zirngibl,* 165 Wis.2d 130, 477 N.W.2d 637, 640 (Ct. App.1991); 38 Am. Our.2d *Gifts* § 72, at 767-69; 14 C. J. S. *Charities* § 30, at 200. Because noncompliance results in a forfeiture of the gift, the conditions must be created by express terms or by clear implication and are construed strictly. *Southwestern Presbyterian Univ. v. City of Clarksville,* 149 Tenn. at 282, 259 S.W. at 558; *Hooton v. Nacarato GMC Truck, Inc.,* 772 S.W.2d 41, 46 (Tenn. Ct. App.1989); *Simmons v. Hitt,* 546 S.W.2d 587, 591 (Tenn. Ct. App.1976). *United Daughters,* 174 S.W. 3d at 114 -115.

This Court reversed the Trial Court's granting of Vanderbilt's motion for summary judgment and held that Vanderbilt had breached its contract with the Daughters by not adhering to the conditions of the agreement, specifically by changing the name of the dormitory. *Id.* at 118 - 119. The Court ordered Vanderbilt to return the gift to the Daughters adjusted to present value should Vanderbilt continue with its noncompliance with the conditions of the gift instruments. *Id.* at 120.

In this case the Trial Court ruled that had Roberts wanted to retain the ability to recover his gift on the conditions it was given, then he needed to expressly or impliedly reserve that right in the gift instrument. Roberts failed to assert that condition in the Charitable Gift Agreement. The cases cited in *United Daughters* to support the principle that non-compliance with the conditions attached can result in forfeiture of the gift, do not lend any insight into the question of whether the remedy of forfeiture must be expressed. *See VerBrycke v. VerBrycke*, 379 Md. 669, 843 A. 2d 758, 771 (2004)(right to revocation not expressed); *Stock v. Augsburg Coll.*, No. C1-01-1673, 2002 WL 555944 at *5(Minn. Ct. App. Apr. 16, 2002(right to return of gift expressed); *Zirngibl v. Zirngibl*, 165 Wis. 2d 130, 477 N. W. 2d 637, 640(Ct. App. 1991)(right to revocation not expressed); *Hooton v. Nacarato GMC Truck, Inc.*, 772 S.W. 2d 41, 46 (Tenn. Ct. App. 1989)(forfeiture clause expressed); *Simmons v. Hitt,* 546 S.W. 2d 587, 591 (Tenn. Ct. App. 1976)(forfeiture of pension plan expressed). But we do not have to reach this issue to affirm the Trial Court's decision on the authority of *United Daughters*. The *inter vivos* gift document between Roberts and Baylor is a contract, and all contracts in equity are enforceable in accordance with equity and good conscience. *Greene County Bank v. Southeastern Properties, Inc., et al.,* 1996 WL 471469 (Tenn. Ct. App. Aug. 21, 1996); *CGR Investments, Inc., v. Hackney Petroleum, Inc.,* 2000 WL 1285246 (Tenn. Ct. App. Sept. 12, 2000).

Tennessee U.D.C. held that Vanderbilt had breached its contract obligations and explained:

> A conditional gift is enforceable according to the terms of the document or documents that created the gift. (Citations Omitted). If the recipient fails or ceases to comply with the conditions, the donor's remedy is limited to recovery of the gift.

The Court then went on to hold that Vanderbilt was required either to return the present value of the gift to Tennessee U.D.C., or "reverse its present course and agree to abide by the conditions originally placed on the gift." *Id.* at 120. The Chancellor's ruling to require Baylor to comply with the conditions attached to the gift was equitable and appropriate. Baylor School, at trial and in its appellate brief, characterized the breach as an "oversight" of failing to notify the donor of the winner's "credentials". Moreover, it did not appeal the Chancellor's ruling requiring it to comply with the conditions of the gift in the future. This remedy is clearly sanctioned in Tennessee U.D.C.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal

-10-

assessed to Daryl J. Roberts.

_____
Herschel Pickens Franks, P.J.